**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVID COHEN,<br><br>               Plaintiff,<br><br>     v.<br><br>LIBERTY MUTUAL GROUP INC.<br>EXECUTIVE PARTNERSHIP DEFERRED<br>COMPENSATION PLAN and LIBERTY<br>MUTUAL GROUP INC. 2012 EXECUTIVE<br>PARTNERSHIP PLAN,<br><br>               Defendants. | Case No. 1:16-cv-09295<br><br>Judge Vernon S. Broderick<br><br><br>**DEFENDANTS' ANSWER AND<br>AFFIRMATIVE DEFENSES TO<br>PLAINTIFF'S AMENDED<br>COMPLAINT** |

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S**
**AMENDED COMPLAINT**

Defendants Liberty Mutual Group Inc. Executive Partnership Deferred Compensation

Plan ("EPDCP") and Liberty Mutual Group Inc. 2012 Executive Partnership Plan ("EPP")

(collectively, "Defendants"), by their undersigned counsel, hereby respond to Plaintiff David

Cohen's ("Plaintiff") Amended Complaint (Dkt. 19) and assert defenses as follows:

**Nature of Action**

1.      This action arises under the Employee Retirement Income Security Act of 1974,
as amended, 29 U.S.C. §1001 *et seq.* ("ERISA") to recover benefits due under employee benefit
plans and to recover attorneys' fees and costs.

**ANSWER:**    Defendants admit that Plaintiff has brought this lawsuit under ERISA §

502(a)(1)(B) for benefits that he claims he is owed under the EPDCP and EPP. Defendants deny

the remaining allegations in this paragraph.

**Jurisdiction and Venue**

2.      This is an action for relief brought pursuant to ERISA § 502(a), § 502(e) and
§502(f), 29 U.S.C. §1132(a), (e), and (f), as well as 28 U.S.C. § 1331 and 28 U.S.C. § 1332
because the matter in controversy exceeds the sum or value of $75,000 and is between
Mr. Cohen, a citizen of New Jersey, and Defendants, who are citizens of Massachusetts.

**ANSWER:**   Defendants admit that this Court has jurisdiction to hear this matter under 28 U.S.C. § 1331 and 28 U.S.C. § 1332. Defendants admit that Plaintiff has brought this lawsuit under ERISA § 502(a)(1)(B) for benefits that he claims he is owed under the EPDCP and EPP.

3.   Venue is proper in this District because Liberty operates within this District, Mr. Cohen was employed by Liberty in this District and a substantial part of the events or omissions giving rise to the claims hereunder occurred in this District.

**ANSWER:**   Defendants admit that venue is proper in the U.S. District Court for the Southern District of New York.

4.   Given that all administrative remedies and/or appeals have been exhausted in this matter, it is properly before this Court for review.

**ANSWER:**   Defendants admit that this matter is properly before the Court with respect to Plaintiff's eligibility for benefits under the EPDCP and EPP.

## Parties

5.   Plaintiff David Cohen is a natural person who resides in the State of New Jersey.

**ANSWER:**   Defendants admit the allegations in this paragraph.

6.   Defendant Liberty Mutual Group Inc. Executive Partnership Deferred Compensation Plan (the "EPDCP") is, and at all times relevant hereto was, an employee benefit plan within the meaning of ERISA section 3(3), 29 U.S.C. §1002(3). The EPDCP's office is located at 175 Berkeley Street, Boston, Massachusetts 02116.

**ANSWER:**   Defendants admit that the EPDCP is an employee benefit plan within the meaning of ERISA § 3(3). Answering further, Defendants state that the EPDCP is a nonqualified deferred compensation plan that is unfunded and maintained primarily to provide deferred compensation to select management and other key employees. Defendants admit that the EPDCP is administered at Liberty Mutual's office at 175 Berkeley Street, Boston, Massachusetts 02116.

7.   Defendant Liberty Mutual Executive Group Inc. Executive Partnership Plan (the "EPP") is, and at all times relevant hereto was, an employee benefit plan within the meaning of ERISA section 3(3), 29 U.S.C. §1002(3). The EPP's office is located at 175 Berkeley Street, Boston, Massachusetts 02116.

**ANSWER:**    Defendants admit that the EPP is an employee benefit plan within the meaning of ERISA § 3(3). Answering further, Defendants state that the EPP is a nonqualified deferred compensation plan that is unfunded and maintained primarily to provide deferred compensation to select management and other key employees. Defendants admit that the EPP is administered at Liberty Mutual's office at 175 Berkeley Street, Boston, Massachusetts 02116.

### Factual Allegations Common to All Causes of Action

8.      Mr. Cohen joined Liberty Mutual Group, Inc. (together with its subsidiaries and affiliates, "Liberty Mutual") in 1999, worked there for more than 16 years, and was the President of LIU US. Liberty International Underwriters ("LIU") is a division of Liberty Mutual that writes "specialty insurance," which insures unusual risks that are not covered by ordinary insurance policies. On October 12, 2015, Mr. Cohen provided Liberty Mutual with two weeks' notice of his resignation and retirement, which was effective October 26, 2015. Mr. Cohen was an employee in good standing at the time of his resignation and retirement from Liberty Mutual.

**ANSWER:**    Defendants admit that Plaintiff was employed by Liberty Mutual from November 24, 1999 to October 26, 2015, and that he previously held the title of President of LIU US. Defendants admit that LIU is a global specialty lines business with an emphasis on niche insurance products distributed through the independent broker network. Upon information and belief, Defendants admit that on October 12, 2015, Plaintiff notified Liberty Mutual that he was resigning effective October 26, 2015. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and accordingly deny the allegations.

9.      Prior to Mr. Cohen's resignation, LIU had undergone a significant restructuring whereby Liberty Mutual's management in Boston had installed new management at LIU's United States operations (which is headquartered in New York City) and curtailed LIU's historical autonomy and entrepreneurial culture. Many LIU employees did not feel comfortable with the structural changes and future direction of LIU and were concerned that the new leadership installed by Liberty Mutual did not have sufficient specialty insurance experience, underwriting experience or international experience. Many LIU employees left for better opportunities at many other companies both prior to and following Mr. Cohen's resignation. Those companies included Everest National, Vela Insurance, W. R. Berkley, AIG, Aspen Insurance U.S. Services Inc. ("Aspen"), Marsh & McLennan, Transatlantic Reinsurance

Company, SCOR, Allianz, QBE, BWD Group, IRB and Munich Reinsurance. In fact, nearly the entire Crisis Management team at LIU went to W. R. Berkley.

**ANSWER:**   Defendants admit that, prior to Plaintiff's departure in October 2015, Liberty

Mutual restructured LIU US to improve the division's performance. Defendants admit that, on or

around the time of Plaintiff's departure, there were other LIU employees who also left the

company. Defendants lack knowledge or information sufficient to form a belief as to the truth of

the allegations regarding the subjective beliefs of Plaintiff or any other current or former LIU

employee, and accordingly deny the allegations. Defendants also lack knowledge or information

sufficient to form a belief as to the truth of the allegations regarding the current employment of

any former Liberty Mutual employee, and accordingly deny the allegations. Defendants deny the

remaining allegations in this paragraph.

10.   By contrast, at the time of Mr. Cohen's resignation from Liberty Mutual, Aspen, unlike LIU, was experiencing significant growth, and was successfully attracting employees from many other companies. Following his resignation from Liberty Mutual, Mr. Cohen accepted a position with Aspen.

**ANSWER:**   Defendants admit that, shortly after separating from Liberty Mutual, Plaintiff

started working for one of Liberty Mutual's competitors, Aspen Insurance U.S. Services Inc.

Defendants lack knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in this paragraph, and accordingly deny the allegations.

11.   Mr. Cohen did not have an employment agreement with Liberty Mutual and was not subject to any non-competition or non-solicitation restrictions. Nevertheless, Mr. Cohen did not recruit or solicit any Liberty Mutual employees, either during or after his retirement from Liberty Mutual.

**ANSWER:**   Defendants admit that Plaintiff did not have an employment agreement with

Liberty Mutual and was not subject to any non-competition or non-solicitation restriction that

would restrict his ability to join Aspen. Answering further, because Plaintiff did not execute a

Post-Employment Restriction Agreement when he left Liberty Mutual in October 2015, he was

4

not, and is not, entitled to any continued vesting under EPDCP § 8.3 or EPP § 7.2. Defendants

lack knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in this paragraph, and accordingly deny the allegations.

12.     During his employment and at the time of Mr. Cohen's retirement from Liberty
Mutual, he participated in a number of Liberty Mutual benefit plans, including the EPDCP and
the EPP (collectively, the "Plans"). Mr. Cohen was entitled to certain vested and unvested
benefits in these Plans based on his age and years of service following his retirement from
Liberty Mutual.

**ANSWER:**     Defendants admit that, during Plaintiff's employment with Liberty Mutual, he

was a participant in certain Liberty Mutual benefit plans, including the EPDCP and EPP.

Defendants deny that Plaintiff was "entitled to certain vested and unvested benefits" under the

EPDCP and EPP because his eligibility for benefits was dependent upon, among other things,

EPDCP § 8.5 and EPP § 7.5. Answering further, because Plaintiff did not execute a Post-

Employment Restriction Agreement when he left Liberty Mutual in October 2015, he was not,

and is not, entitled to any continued vesting under EPDCP § 8.3 or EPP § 7.2.

13.     The EPDCP is a deferred compensation plan for employees of Liberty Mutual and
its subsidiaries that provides for cash payments at designated times based on the future value of
"Restricted Units" granted under the EPDCP. Restricted Units granted under the EPDCP vest on
each of the four anniversaries following grant, and participants may elect the time and form of
the cash payment relating to vested Restricted Units, which include cash payments upon
retirement. The value of Restricted Units is determined based on the value of Liberty Mutual
Holding Company Inc. ("LMHC").

**ANSWER:**     This paragraph purports to characterize the terms of the EPDCP, which speaks for

itself as to its contents. Accordingly, Defendants deny any characterizations or allegations of the

same that are contrary thereto. Answering further, Defendants state that the EPDCP is a

nonqualified deferred compensation plan that is unfunded and maintained primarily to provide

deferred compensation to select management and other key employees. Defendants further state

that the stated purpose of the EPDCP is to "provide an incentive to participating executives to

work together in partnership to improve the Company's overall long term performance" by

providing "deferred compensation to certain key employees ... in the form of a right to receive cash payments at designated times based on the future value of Restricted Units...."

14.    The EPP is an incentive plan for employees of Liberty Mutual and its subsidiaries that provides participants with the right to participate in the increase in the overall enterprise value of LMHC through the award of Appreciation Units. Appreciation Units vest on each of the four anniversaries following their grant, and participants may redeem vested Appreciation Units for a cash payment. Appreciation Units that are unvested as of a participant's retirement remain outstanding and continue to vest.

**ANSWER:**    This paragraph purports to characterize the terms of the EPP, which speaks for itself as to its contents. Accordingly, Defendants deny any characterizations or allegations of the same that are contrary thereto. Answering further, Defendants state that EPP is a nonqualified deferred compensation plan that is unfunded and maintained primarily to provide deferred compensation to select management and other key employees. Defendants further state that the stated purpose of the EPP is to "provide an incentive to participating executives to work together in partnership to improve the Company's overall long term performance" by providing "certain key employees ... the right to participate in the increase in the overall enterprise value of LMHC through the award of Appreciation Units...."

15.    As of December 23, 2016, Mr. Cohen held $971,500 of vested units and investment fund value in the EPDCP and EPP, and $299,124 of unvested units in the EPDCP and EPP.

**ANSWER:**    Defendants admit that the "Termination Summary of Compensation, Benefits & Perquisites" attached to Liberty Mutual's letter dated December 23, 2015 set forth the value of Plaintiff's benefits under the EPDCP and EPP as of that date if Liberty Mutual had not classified his termination as a termination for cause. Defendants deny the remaining allegations in this paragraph.

16.    On December 24, 2015, more than two months after Mr. Cohen's resignation and retirement from Liberty Mutual, Mr. Cohen received a two-sentence letter from Liberty Mutual that stated: "as a result of information uncovered after your voluntary resignation on October 25, 2015, we are reclassifying your termination from a voluntary resignation to a termination for

cause." The letter, dated December 23, 2015, attached a one-page summary of Mr. Cohen's benefits that were being reduced (the "Benefits Reduction"). Specifically, the Benefits Reduction stated that Liberty Mutual was unilaterally eliminating all of Mr. Cohen's vested and unvested units in the EPDCP and EPP. According to the Benefits Reduction, this purported forfeiture amounted to $971,500 of vested units and investment fund value, and $299,125 of unvested units.

**ANSWER:** Defendants admit that, on December 23, 2015, Liberty Mutual sent Plaintiff a letter informing him that Liberty Mutual was "reclassifying [his] termination from a voluntary resignation to a termination for cause." Defendants admit that the letter included a "Termination Summary of Compensation, Benefits & Perquisites" that listed the "Compensation Plans," "Benefit Plans," and "Perquisite Plans" potentially implicated by Liberty Mutual's reclassification of Plaintiff's departure. Defendants deny that the letter was a "Benefits Reduction" and deny that Liberty Mutual sent the letter on behalf of the EPDCP or EPP. The remaining allegations in this paragraph purport to characterize the December 23, 2015 letter, which speaks for itself as to its contents. Accordingly, Defendants deny any characterizations or allegations of the same that are contrary thereto.

17. The Benefits Reduction did not state *why* Mr. Cohen's retirement was reclassified as a termination of employment for "cause," nor did it identify *who* made the decision to cancel and reduce his benefits under the Plans. The Benefits Reduction also did not define what conduct constitutes "cause" under any of the Plans, nor did it refer to any specific provision in any of the Plans. Other than an oblique reference to "information uncovered," the Benefits Reduction was silent even as to what conduct by Mr. Cohen purportedly justified Liberty Mutual's decision to reduce and eliminate approximately $1.3 million of Mr. Cohen's benefits.

The Benefits Reduction also did not identify any means by which Mr. Cohen could challenge the adverse benefit determination.

**ANSWER:** Defendants deny that the December 23, 2015 letter was a "Benefits Reduction" and deny that Liberty Mutual sent the letter on behalf of the EPDCP or EPP. The remaining allegations in this paragraph purport to characterize the December 23, 2015 letter, which speaks for itself as to its contents. Accordingly, Defendants deny any characterizations or allegations of the same that are contrary thereto.

18.     In violation of Plan documents and applicable ERISA regulations (29 C.F.R. § 2560.503-1(g)), the Benefits Reduction did not provide Mr. Cohen (i) the specific reason or reasons for the adverse benefit determination, (ii) reference to the specific plan provisions on which the determination was based, (iii) a description of any additional material or information necessary for Mr. Cohen to perfect the claim and an explanation of why such material or information is necessary, and (iv) a description of the plan's review procedures and the time limits applicable to such procedures, including Mr. Cohen's right to bring a civil action under ERISA Section 502(a).

**ANSWER:**     Defendants deny that the December 23, 2015 letter was a "Benefits Reduction" and deny that Liberty Mutual sent the letter on behalf of the EPDCP or EPP. Answering further, Defendants state that the letter dated May 19, 2016 from Lori B. Andrews, who was delegated the authority to act on behalf of the EPDCP and EPP, was the initial "adverse benefit determination" under 29 C.F.R. § 2560.503-1(g) with respect to Plaintiff's claims for benefits under the EPDCP and EPP. Defendants deny the remaining allegations in this paragraph.

19.     Mr. Cohen was shocked when he received the Benefits Reduction from Liberty Mutual. After sixteen years of hard work for Liberty Mutual, Mr. Cohen expected Liberty Mutual to follow through on the promises it made to him under the Plans. Instead, Liberty Mutual decided summarily to terminate approximately $1.3 million of Mr. Cohen's benefits with virtually no information or explanation. Nor did it provide any information to Mr. Cohen regarding any recourse to challenge the Benefits Reduction.

**ANSWER:**     Defendants deny that the December 23, 2015 letter was a "Benefits Reduction" and deny that Liberty Mutual sent the letter on behalf of the EPDCP or EPP. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and accordingly deny the allegations.

20.     Mr. Cohen sent numerous letters to Liberty Mutual requesting documents, records and other information relevant to the Benefits Reduction and his benefits under the Plans. Fundamentally, Mr. Cohen had two important questions: who at Liberty Mutual made the initial decision to reduce his benefits under the Plans, and most importantly, what specific actions by Mr. Cohen were the bases for Liberty Mutual's decision?  To this day, Liberty Mutual has been unwilling to answer these basic, fundamental questions.

**ANSWER:**     Defendants deny that the December 23, 2015 letter was a "Benefits Reduction" and deny that Liberty Mutual sent the letter on behalf of the EPDCP or EPP. Answering further,

Defendants admit that Plaintiff sent letters to Liberty Mutual seeking information regarding

Liberty Mutual's reclassification decision and his alleged benefits under the EPDCP and EPP.

Answering further, the majority of the allegations in this paragraph purport to characterize

Plaintiff's letters (and Liberty Mutual's responses), which speak for themselves as to their

contents. Accordingly, Defendants deny any characterizations or allegations of the same that are

contrary thereto. Defendants lack knowledge or information sufficient to form a belief as to the

truth of the remaining allegations in this paragraph, and accordingly deny the allegations.

21.     Following Liberty Mutual's refusal to respond to Mr. Cohen's repeated written
requests for information pertaining to the Benefits Reduction, Mr. Cohen appealed the Benefits
Reduction to the administrators of the Plans (the "Plan Administrators") on February 19, 2016
(within 60 days after the December 23, 2015 Benefits Reduction, as required under the terms of
the Plans).

**ANSWER:**     Defendants deny that the December 23, 2015 letter was a "Benefits Reduction"

and deny that Liberty Mutual sent the letter on behalf of the EPDCP or EPP. Defendants also

deny that the February 19, 2016 letter was an "appeal." Answering further, Defendants state that

Plaintiff's letter dated February 19, 2016 was an initial claim for benefits under 29 C.F.R. §

2560.503-1(e) with respect to the benefits he claims he is owed under the EPDCP and EPP. The

remaining allegations in this paragraph purport to characterize the terms of the EPDCP and EPP,

which speak for themselves as to their contents. Accordingly, Defendants deny any

characterizations or allegations of the same that are contrary thereto.

22.     Mr. Cohen explained to the Plan Administrators in his February 19, 2016 appeal,
among other things, that neither of the Plans define "cause" and that Mr. Cohen did not engage
in any conduct that would amount to "cause" under any reasonable interpretation of that term.
Mr. Cohen also repeated his requests for information regarding the decision to reduce his
benefits.

**ANSWER:**     Defendants deny that the February 19, 2016 letter was an "appeal." Answering

further, Defendants state that Plaintiff's letter dated February 19, 2016 was an initial claim for

benefits under 29 C.F.R. § 2560.503-1(e) with respect to the benefits he claims he is owed under

the EPDCP and EPP. Answering further, the remaining allegations in this paragraph purport to characterize the February 19, 2016 letter, which speaks for itself as to its contents. Accordingly, Defendants deny any characterizations or allegations of the same that are contrary thereto.

23.    On May 19, 2016, Mr. Cohen received a letter from Lori B. Andrews (Liberty Mutual's Vice President, Talent & Enterprise Services), which denied Mr. Cohen's appeal for benefits under the EPDCP and the EPP. Ms. Andrews claimed that she was delegated authority to review and decide claims for benefits under the Plans by the relevant Plan Administrators, but did not provide any evidence of such a delegation.

**ANSWER:**    Defendants admit that Lori B. Andrews, who was delegated the authority to act on behalf of the EPDCP and EPP, sent Plaintiff a letter on May 19, 2016 responding to the initial claim for EPDCP and EPP benefits in his February 19, 2016 letter. Defendants admit that Ms. Andrews is Liberty Mutual's Vice President of Talent & Enterprise Services. Answering further, Defendants state that evidence of the delegation of authority to Ms. Andrews was attached to the letter from Melanie Foley to Plaintiff dated September 15, 2016. The remaining allegations in this paragraph purport to characterize the May 19, 2016 letter, which speaks for itself as to its contents. Accordingly Defendants deny any characterizations or allegations of the same that are contrary thereto.

24.    The denial re-characterized Mr. Cohen's February 19, 2016 appeal of the December 23, 2015 Benefits Reduction as "initial" claims for benefits under the Plans, rather than as an appeal of the December 23, 2015 Benefits Reduction.

**ANSWER:**    Defendants deny that the December 23, 2015 letter was a "Benefits Reduction" and deny that Liberty Mutual sent the letter on behalf of the EPDCP or EPP. Defendants deny that the February 19, 2016 letter was an "appeal." Answering further, Defendants state that the May 19, 2016 letter properly characterized Plaintiff's February 19, 2016 letter as an initial claim for benefits under 29 C.F.R. § 2560.503-1(e).

25.    In her May 19, 2016 letter, Ms. Andrews did not define -- or even attempt to define -- the meaning of the term "cause" under either Plan, nor did she identify any specific conduct by Mr. Cohen to support a retroactive re-characterization of Mr. Cohen's resignation as

a termination of employment for "cause" and the reduction of Mr. Cohen's vested and unvested benefits by approximately $1.3 million. Instead, Ms. Andrews' letter merely referenced "the circumstances surrounding Mr. Cohen's departure" and "their resulting disruption to the Company's business."  In other words, the mere fact that Mr. Cohen had <u>left Liberty Mutual</u> appeared to be the basis for characterizing his resignation as a termination for "cause" and substantially reducing his benefits. Tellingly, even though nearly five months had passed since the Benefits Reduction -- and nearly seven months had passed since Mr. Cohen had left Liberty Mutual -- Ms. Andrews did not point to any evidence whatsoever of any wrongdoing by Mr. Cohen to support Liberty Mutual's decision to reduce Mr. Cohen's benefits by approximately $1.3 million.

**ANSWER:**   The allegations in this paragraph purport to characterize the May 19, 2016 letter, which speaks for itself as to its contents. Accordingly, Defendants deny any characterizations or allegations of the same that are contrary thereto. Defendants deny the remaining allegations in this paragraph.

26.   The mere act of Mr. Cohen <u>leaving Liberty Mutual</u> cannot constitute a termination of employment for "cause" under any reasonable definition of that term. Indeed, had the company wanted to, it could have designed Plans that provided that an employee's mere departure from the company would result in a reduction of the employee's benefits. It did <u>not</u> do so but, instead, provided a requirement that the employee had engaged in conduct during his employment that rose to the level of a termination of employment for "cause."

**ANSWER:**   The allegations in this paragraph state Plaintiff's legal conclusions, to which no response is required. To the extent the allegations are intended to be factual, Defendants deny the allegations. The remaining allegations in this paragraph purport to characterize the terms of the EPDCP and EPP, which speak for themselves as to their contents. Accordingly, Defendants deny any characterizations or allegations of the same that are contrary thereto.

27.   Indeed, both the EPP and EPDCP specifically state that a reclassification for "cause" requires "*evidence*... after employment termination that a Participant acted or failed to act in such a manner that would have provided grounds for a 'cause' termination."

**ANSWER:**   The allegations in this paragraph purport to characterize the terms of the EPDCP and EPP, which speak for themselves as to their contents. Accordingly, Defendants deny any characterizations or allegations of the same that are contrary thereto.

11

28.     On June 23, 2016, more than six months after reducing and forfeiting Mr. Cohen's benefits under the Plans, and following his repeated written requests for information pertaining to that adverse benefit determination, Ms. Andrews sent Mr. Cohen three pages of handwritten notes. These handwritten notes were dated in May 2016 and, thus, were made not only six months _after_ the December 2015 reclassification of Mr. Cohen's retirement as a termination of employment for cause, but also three months _after_ his February 19, 2015 appeal of the Benefits Reduction. Despite Mr. Cohen's repeated written requests to the Plan Administrators to provide details regarding these handwritten notes -- _e.g._, who wrote them -- no further information was ever provided to Mr. Cohen.

**ANSWER:**     Defendants admit that, on June 23, 2016, Lori B. Andrews, who was delegated the authority to act on behalf of the EPDCP and EPP, provided Plaintiff with three pages of handwritten notes from her investigation into Plaintiff's initial claim for benefits under the EPDCP and EPP in his February 19, 2016 letter. Defendants admit that the handwritten notes were dated in May 2016 because that was when Ms. Andrews was investigating Plaintiff's initial claims for benefits under the EPDCP and EPP and created the handwritten notes. Defendants deny the remaining allegations in this paragraph.

29.     The first set of handwritten notes of this unidentified person or persons, dated May 3, 2016, state: "term for cause related to his [Mr. Cohen] leaving and taking all those people and doing severe damage to our business."  The second set of notes, dated May 12, 2016, state: "DC leaving and taking so many team members demanded significant immediate attention from mgmt."

**ANSWER:**     The allegations in this paragraph purport to quote from Lori B. Andrews' handwritten notes, which speak for themselves as to their contents. Accordingly, Defendants deny any characterizations or allegations of the same that are contrary thereto.

30.     None of Ms. Andrews, the Plan Administrators, or Liberty Mutual has explained these cryptic comments that are meant to justify the forfeiture of approximately $1.3 million of Mr. Cohen's benefits. Nonetheless, one fact is clear: Liberty Mutual did not provide Mr. Cohen any documents or information that predate these May 2016 notes to even attempt to support its December 2015 determination to reduce Mr. Cohen's benefits and reclassify Mr. Cohen's retirement as a termination for "cause."

**ANSWER:**     Defendants deny that the December 23, 2015 letter was a "Benefits Reduction" and deny that Liberty Mutual sent the letter on behalf of the EPDCP or EPP. Answering further,

Defendants state that the May 19, 2016 letter was the initial "adverse benefit determination" under 29 C.F.R. § 2560.503-1(g) with respect to Plaintiff's claim for benefits under the EPDCP and EPP. The remaining allegations in this paragraph purport to characterize the terms of the EPDCP and EPP and the administrative record, which speak for themselves as to their contents. Accordingly, Defendants deny any characterizations or allegations of the same that are contrary thereto.

31.     While these handwritten notes have never been explained, the references to "taking all those people" and "taking so many team members" presumably refers to other LIU employees who left Liberty Mutual to join Aspen after Mr. Cohen left Liberty Mutual. As such, the basis for Liberty Mutual's reclassification of Mr. Cohen's resignation could be the Plan Administrators' speculation that Mr. Cohen recruited Liberty Mutual employees to leave Liberty Mutual and join him at Aspen.

**ANSWER:**     The allegations in this paragraph purport to quote from and characterize Lori B. Andrews' handwritten notes, which speak for themselves as to their contents. Accordingly Defendants deny any characterizations or allegations of the same that are contrary thereto. The remaining allegations in this paragraph state Plaintiff's subjective beliefs and speculations, to which no response is required. To the extent the allegations are intended to be factual, Defendants deny the allegations.

32.     Although Mr. Cohen was not subject to any non-solicitation or non-compete restrictions, there is no evidence cited by any of the Plan Administrators that Mr. Cohen recruited or solicit [sic] any Liberty Mutual employees -- either during or after his resignation from the company -- because the uniform evidence submitted to the Plan Administrators was to the contrary. Moreover, the subsequent decisions of <u>other</u> LIU employees to leave Liberty Mutual after Mr. Cohen left cannot serve as a legitimate basis for Liberty Mutual to re-characterize Mr. Cohen's October 2015 resignation as a termination for "cause" and reduce Mr. Cohen's benefits.

**ANSWER:**     Defendants admit that Plaintiff was not subject to any non-competition or non-solicitation restriction that would restrict his ability to join one of Liberty Mutual's competitors. Answering further, the allegations in this paragraph purport to characterize the terms of the EPDCP and EPP and the administrative record, which speak for themselves as to their contents.

Accordingly, Defendants deny any characterizations or allegations of the same that are contrary thereto. The remaining allegations in this paragraph state Plaintiff's legal conclusions, to which no response is required. To the extent the allegations are intended to be factual, Defendants deny the allegations.

33.     In connection with Mr. Cohen's appeal of Liberty Mutual's reduction of his benefits under the Plans, Mr. Cohen submitted 30 affidavits from the employees who decided to leave LIU and join Aspen. Each affiant swore under penalty of perjury that he or she was not recruited or solicited by Mr. Cohen to leave employment with Liberty Mutual, both before and after Mr. Cohen resigned from Liberty Mutual. There is zero evidence to the contrary. They left because they were not happy with Liberty Mutual's newly installed management at LIU and/or viewed Aspen as a better career opportunity. Quite simply, Liberty Mutual's reduction of approximately $1.3 million of Mr. Cohen's benefits was premised upon a pure -- and incorrect - speculation that Mr. Cohen had recruited those employees while he was employed with Liberty Mutual. That these other individuals subsequently decided to leave Liberty Mutual for a better opportunity clearly cannot constitute retroactive "cause" for termination of Mr. Cohen's employment under any reasonable definition of that term.

**ANSWER:**     Defendants admit that, in connection with Plaintiff's July 21, 2016 appeal of the initial adverse benefits determination letter dated May 19, 2016, Plaintiff submitted affidavits from 30 former LIU employees who were then employed by Aspen. Defendants also admit that each affiant stated that he or she had not been recruited or solicited by Plaintiff to leave Liberty Mutual. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the subjective beliefs of any former LIU employee, and accordingly deny the allegations. The remaining allegations in this paragraph state Plaintiff's legal conclusions, subjective beliefs, and speculations, to which no response is required. To the extent the allegations are intended to be factual, Defendants deny the allegations.

34.     Ms. Andrews' May 19, 2016 letter informed Mr. Cohen that he could appeal the denial of his EPDCP and EPP benefits to Melanie Foley, who is Liberty Mutual's Executive Vice President, Chief Talent and Enterprise Services. In this role, on information and belief, Ms. Foley serves as the chief officer of Liberty Mutual's Human Resources department. Ms. Andrews' letter further provided that if such an appeal were denied by Ms. Foley, Mr. Cohen had the right to bring a civil action under ERISA Section 502(a).

**ANSWER:**    Defendants admit that Melanie Foley is Liberty Mutual's Executive Vice President, Chief Talent & Enterprise Services Officer. Defendants deny that Ms. Foley serves as the chief officer of Liberty Mutual's Human Resources department and state that Liberty Mutual's Executive Vice President, Manager of Enterprise Talent & HR Services is the head of its HR Services and that he reports to Ms. Foley. The remaining allegations in this paragraph purport to characterize the May 19, 2016 letter, which speaks for itself as to its contents. Accordingly, Defendants deny any characterizations or allegations of the same that are contrary thereto.

35.    By letter dated July 21, 2016, Mr. Cohen appealed the denial of his benefits under the Plans to Ms. Foley.

**ANSWER:**    Defendants admit that, on July 21, 2016, Plaintiff sent a letter appealing the May 19, 2016 initial adverse benefits determination with respect to his claim for benefits under the EPDCP and EPP.

36.    In his July 21, 2016 appeal letter, Mr. Cohen explained to Ms. Foley that no "cause" existed for a reclassification of his resignation. Specifically, Mr. Cohen attested that he did not recruit or solicit any LIU employees -- either during or after his resignation from the company - and had zero contact with Aspen's outside recruiter who had recruited the Liberty employees. As discussed above, Mr. Cohen also submitted 30 affidavits from the people who departed Liberty Mutual and joined Aspen after Mr. Cohen had left. Those affidavits all confirm that no Liberty Mutual employee was recruited or solicited by Mr. Cohen to leave Liberty Mutual, including while Mr. Cohen was employed by Liberty Mutual.

**ANSWER:**    The allegations in this paragraph purport to characterize the July 21, 2016 appeal letter, which speaks for itself as to its contents. Accordingly, Defendants deny any characterizations or allegations of the same that are contrary thereto. Defendants admit that Plaintiff submitted with his July 21, 2016 appeal letter affidavits from 30 former LIU employees who were then employed by Aspen. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and accordingly deny the allegations.

37.     By letter dated September 15, 2016, Ms. Foley denied Mr. Cohen's appeal. As with the prior communications from Liberty Mutual, Ms. Foley did not specify any improper conduct by Mr. Cohen and did not even provide a definition of the term "cause." Rather, the letter remarkably confirmed what the handwritten notes provided by Ms. Andrews had said: that it was Mr. Cohen's <u>departure</u> from Liberty Mutual -- itself-- that supposedly constituted sufficient "cause" to justify Liberty Mutual's reduction of approximately $1.3 million of Mr. Cohen's benefits. According to Ms. Foley's letter, the company had experienced problems <u>"resulting from Mr. Cohen's departure."</u>  Ms. Foley also asserted that she had conducted an "investigation" regarding whether Mr. Cohen had engaged in conduct constituting "cause," but she kept the results of that supposed investigation secret and, like the prior denial letter, her denial letter did not disclose any evidence whatsoever of any improper conduct by Mr. Cohen.

**ANSWER:**     Defendants admit that Melanie Foley, who was delegated the authority to act on behalf of the EPDCP and EPP, sent Plaintiff a letter dated September 15, 2016, denying his appeal of the initial adverse benefits determination dated May 19, 2016. The remaining allegations in this paragraph purport to characterize the September 15, 2016 letter, which speaks for itself as to its contents. Accordingly, Defendants deny any characterizations or allegations of the same that are contrary thereto.

38.     Ms. Foley's letter denying Mr. Cohen's claims for EPDCP and EPP benefits stated that Mr. Cohen has the right to bring a civil action under ERISA Section 502(a).

**ANSWER:**     The allegations in this paragraph purport to characterize the September 15, 2016 letter, which speaks for itself as to its contents. Accordingly, Defendants deny any characterizations or allegations of the same that are contrary thereto.

### First Cause of Action - Claim for Benefits under ERISA §502(a)(1)(B)
**(Against Defendant Liberty Mutual Group Inc. Executive Partnership Deferred Compensation Plan)**

39.     Mr. Cohen repeats and realleges paragraphs 1 through paragraph 38 as if fully set forth herein.

**ANSWER:**     Defendants repeat and incorporate by reference their responses to paragraphs 1-38 as if fully set forth herein.

40.     This claim is brought under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) against Defendant Liberty Mutual Group Inc. Executive Partnership Deferred Compensation Plan.

16

**ANSWER:**   Defendants admit that Plaintiff purports to bring a benefits claim against the EPDCP under ERISA § 502(a)(1)(B).

41.   The Benefits Reduction purported to forfeit Mr. Cohen's benefits under the EPDCP.

**ANSWER:**   Defendants deny that the December 23, 2015 letter was a "Benefits Reduction" and deny that Liberty Mutual sent the letter on behalf of the EPDCP.   Defendants deny the remaining allegations in this paragraph.

42.   Mr. Cohen appealed the Benefits Reduction and exhausted the administrative appeals processes provided by the EPDCP.

**ANSWER:**   Defendants deny that the December 23, 2015 letter was a "Benefits Reduction" and deny that Liberty Mutual sent the letter on behalf of the EPDCP. Answering further, Defendants admit that Plaintiff appealed the initial adverse benefits determination dated May 19, 2016 and exhausted the administrative appeals processes with respect to his eligibility for benefits under the EPDCP.

43.   It violated the terms of the EPDCP to forfeit Mr. Cohen's benefits without any evidence of any wrongdoing by Mr. Cohen during his employment with Liberty Mutual and to reduce his benefits merely because he left the company.

**ANSWER:**   The allegations in this paragraph state Plaintiff's legal conclusions, to which no response is required. To the extent the allegations are intended to be factual, Defendants deny the allegations.

44.   Mr. Cohen is now suffering and will continue to suffer monetary injury as a result of Defendant EPDCP's improper forfeiture of his benefits.

**ANSWER:**   Defendants deny the allegations in this paragraph.

45.   Mr. Cohen is entitled to have Defendant EPDCP restore his benefits under the EPDCP, both prospectively and retroactively, with interest.

**ANSWER:**   Defendants deny the allegations in this paragraph.

**Second Cause of Action - Claim for Benefits under ERISA §502(a)(1)(B)**
**(Against Defendant Liberty Mutual Group Inc. 2012 Executive Partnership Plan)**

46.    Mr. Cohen repeats and realleges paragraphs 1 through paragraph 45 as if fully set forth herein.

**ANSWER:**    Defendants repeat and incorporate by reference their responses to paragraphs 1-45 as if fully set forth herein.

47.    This claim is brought under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) against Defendant Liberty Mutual Group Inc. 2012 Executive Partnership Plan.

**ANSWER:**    Defendants admit that Plaintiff purports to bring a benefits claim against the EPP under ERISA § 502(a)(1)(B).

48.    The Benefits Reduction purported to forfeit Mr. Cohen's benefits under the EPP.

**ANSWER:**    Defendants deny that the December 23, 2015 letter was a "Benefits Reduction" and deny that Liberty Mutual sent the letter on behalf of the EPP. Defendants deny the remaining allegations in this paragraph.

49.    Mr. Cohen appealed the Benefits Reduction and exhausted the administrative appeals processes provided by the EPP.

**ANSWER:**    Defendants deny that the December 23, 2015 letter was a "Benefits Reduction" and deny that Liberty Mutual sent the letter on behalf of the EPP. Answering further, Defendants admit that Plaintiff appealed the initial adverse benefits determination dated May 19, 2016 and exhausted the administrative appeals processes with respect to his eligibility for benefits under the EPP.

50.    It violated the terms of the EPP to forfeit Mr. Cohen's benefits without any evidence of any wrongdoing by Mr. Cohen during his employment with Liberty Mutual and to reduce his benefits merely because he left the company.

**ANSWER:**    The allegations in this paragraph state Plaintiff's legal conclusions, to which no response is required. To the extent the allegations are intended to be factual, Defendants deny the allegations.

51.     Mr. Cohen is now suffering and will continue to suffer monetary injury as a result of Defendant EPP's improper forfeiture of his benefits.

**ANSWER:**     Defendants deny the allegations in this paragraph.

52.     Mr. Cohen is entitled to have Defendant EPP restore his benefits under the EPP, both prospectively and retroactively, with interest.

**ANSWER:**     Defendants deny the allegations in this paragraph.

### Prayer for Relief

Mr. Cohen prays that this Court enter judgment as follows:

1.     Ordering Defendants to restore Mr. Cohen's forfeited and reduced benefits under the EPDCP and the EPP, with interest;

2.     Declaring that Mr. Cohen's forfeited benefits under the EPDCP and EPP should be restored to him;

3.     Awarding Mr. Cohen his costs, disbursements, expenses and attorney's fees herein; and

4.     Awarding Mr. Cohen such other and further relief as the court may deem just and proper.

**ANSWER:**     To the extent that a response to the Plaintiff's Prayer for Relief is required, Defendants deny each and every allegation contained therein, deny all of Plaintiff's claims, deny that they engaged in any violation of the law or other wrongdoing, and specifically deny that Plaintiff is entitled to any benefits under the EPDCP or EPP or any other relief, claims, damages, fees, disbursements, or costs.

* * * *

### GENERAL DENIAL

Defendants deny each and every allegation of Plaintiff's Amended Complaint not specifically admitted above.

* * * *

## ADDITIONAL AND/OR AFFIRMATIVE DEFENSES

Without assuming any burden of proof that they would not otherwise bear, Defendants assert the following additional or affirmative defenses to the claims brought against them.

### FIRST DEFENSE:
### FAILURE TO STATE A CLAIM

Plaintiff fails to state a claim on which relief can be granted because, among other things, Plaintiff's allegations in the Amended Complaint fail to establish that the plan administrators' determinations that Plaintiff was ineligible for benefits under the terms of the EPDCP and EPP were arbitrary and capricious.

### SECOND DEFENSE:
### NO RIGHT TO A JURY TRIAL

There is no right to a jury trial in a lawsuit brought to recover benefits under ERISA. Accordingly, Plaintiff fails to state any claim which would entitle him to a jury trial.

### THIRD DEFENSE:
### "TOP HAT" PLANS

The EPDCP and EPP are nonqualified deferred compensation plans that are unfunded and maintained primarily to provide deferred compensation to select management and other key employees. As such, the EPDCP and EPP are exempt from the anti-forfeiture, participation and vesting, funding, and fiduciary responsibility requirements under ERISA.

### FOURTH DEFENSE:
### FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

To the extent the Court determines that Plaintiff is entitled to any benefits under the EPDCP and EPP—which Defendants expressly deny—the valuation of those benefits is not properly before the Court because Plaintiff has not exhausted his administrative remedies.

Plaintiff's claims for benefits, and the plan administrators' denial of those claims, related only to Plaintiff's eligibility for benefits under the EPDCP and EPP.

## FIFTH DEFENSE:
## PLAINTIFF'S BENEFITS LIMITED BY PLAN TERMS

To the extent the Court determines that Plaintiff is entitled to any benefits under the EPDCP and EPP —which Defendants expressly deny—he is not entitled to continued vesting of any EPDCP or EPP benefits after he left Liberty Mutual in October 2015 because he failed to comply with the "Special Rules for Redemption Following Termination of Employment Due to Retirement" set forth in EPDCP § 8.3 and EPP § 7.2. With respect to any "vested" EPDCP or EPP benefits, Plaintiff is subject to the limitations set forth in EPDCP § 8.6 and EPP § 7.6.

Notwithstanding the foregoing, Defendants incorporate their Fourth Defense and state that the valuation of Plaintiff's benefits under the EPDCP and EPP is not properly before the Court because Plaintiff has not exhausted his administrative remedies.

\* \* \* \*

## RESERVATION OF RIGHTS

Defendants state that, following the completion of discovery and investigation into this matter, additional defenses may become available. Defendants reserve the right to assert additional defenses that may be discovered in the course of these proceedings.

\* \* \* \*

## RELIEF REQUESTED

Defendants respectfully request that the Court enter judgment in their favor, including the following:

1.    Denying all relief sought by Plaintiff in the Amended Complaint and dismissing the Amended Complaint in its entirety with prejudice.

21

2.      Awarding Defendants their attorneys' fees, costs, and expenses incurred in defending this lawsuit; and

3.      Awarding Defendants any other relief that this Court deems is just and proper.

Dated: March 1, 2017                          MAYER BROWN LLP

                                    By:     /s/ Richard E. Nowak
                                            Richard E. Nowak
                                            Nancy G. Ross
                                            71 South Wacker Drive
                                            Chicago, Illinois 60606
                                            Tel: 312-701-8809
                                            Fax: 312-706-8140
                                            rnowak@mayerbrown.com
                                            nross@mayerbrown.com

                                            *Attorneys for Defendants Liberty Mutual Group Inc. Executive Partnership Deferred Compensation Plan and Liberty Mutual Inc. 2012 Executive Partnership Plan*