# Exhibit 1

# Liberty Mutual Group Inc.
## Executive Partnership Deferred Compensation Plan

(as Amended and Restated, effective January 1, 2012)

Section 1.  Purpose.

The purpose of the Liberty Mutual Group Inc. Executive Partnership Deferred Compensation Plan (the "Plan") is to provide an incentive to participating executives to work together in partnership to improve the Company's overall long term performance. To accomplish this goal, the Plan provides deferred compensation to certain key employees of Liberty Mutual Group Inc. and its Subsidiaries in the form of a right to receive cash payments at designated times based on the future value of Restricted Units as further described below. The effective date of this amendment and restatement of the Plan is January 1, 2012. This amended and restated document shall apply to any Participant who incurs a Separation from Service, dies or suffers a Disability on or after January 1, 2012.

Section 2.  Definitions.

For purposes of the Plan, the following terms shall be defined as set forth below:

2.1 "Administrator" means the Company.

2.2 "AOCI" means accumulated other comprehensive income, determined in accordance with generally accepted accounting principles.

2.3 "Appreciation Unit" means an "Appreciation Unit" as defined under the terms of the EPP.

2.4 "Alternative Investment Account" means the notional account established for Participants under Section 9.

2.5 "Beneficiary" means the person selected by a Participant pursuant to such rules and conditions as established by the Administrator from time to time who is entitled to receive such Participant's remaining unpaid vested benefits under the Plan, if any, as of the date of the Participant's death. In the event a Participant dies without designating a Beneficiary, or in the event no designated Beneficiary survives the Participant, the Beneficiary shall be the Participant's estate.

2.6 "Board" means the Board of Directors of LMHC.

2.7 "Book Value" means, with respect to a fiscal year, LMHC's total assets less LMHC's total liabilities, determined in accordance with generally accepted accounting principles, as of the last day of such year.

2.8 "Code" means the Internal Revenue Code of 1986, as amended.

2.9 "Committee" means the Compensation Committee of the Board of Directors of Liberty Mutual Holding Company Inc. If at any time no Committee shall be in office, then the functions of the Committee specified in the Plan shall be exercised by the Board.

2.10 "Company" means Liberty Mutual Group Inc.

2.11 "Deferral/Reallocation Window Period" means the period from April 1 through June 30 of each calendar year.

2.12 "Disability" or "Disabled" means a physical or mental condition of an apparently permanent nature which prevents a Participant from performing the principal duties of his or her regular occupation with the Company or a Subsidiary, as determined to the sole satisfaction of the Committee.

2.13 "DPDCP" means the Liberty Mutual Holding Company Inc. Director Partnership Deferred Compensation Plan, as may be amended from time to time.

2.14 "Earnings Measure" for this purpose means an interest rate, stock index, bond index, mutual fund, internal rate of return, or other objective measure of investment performance specified by the Administrator for purposes of measuring and crediting notional earnings under Section 9.2.

2.15 "EPP" means the Liberty Mutual Group Inc. 2012 Executive Partnership Plan, effective as of January 1, 2012, as may be amended from time to time.

2.16 "Grant Date" means the date on which the Committee grants Restricted Units under the Plan. Unless indicated otherwise under the Plan or by action of the Committee, the Grant Date for purposes of Restricted Units granted during a fiscal year shall be deemed to be April 1 of such year.

2.17 "LMHC" means Liberty Mutual Holding Company Inc.

2.18 "Participant" means an employee or former employee who has been awarded Restricted Units under the Plan.

2.19 "Plan" means the Liberty Mutual Group Inc. Executive Partnership Deferred Compensation Plan, as amended from time to time.

2.20 "Post-Employment Restriction Agreement" means an agreement imposing restrictions and obligations on a Participant upon and after Retirement, including but not limited to non-competition and non-solicitation provisions. The Company shall impose such terms and conditions under Post-Employment Restriction Agreements as it considers reasonable in its sole discretion, which may vary among Participants based on the facts and circumstances.

2.21 "Restricted Unit" means a right to receive a cash payment subject to the terms and conditions of the Plan or, solely for purposes of the limitations of Section 5.2 of the Plan, the DPDCP.

2.22 "Restricted Unit Account" means the account described in Section 6.

2.23 "Retirement" or "Retires" means, solely for purposes of determining the timing of payment with respect to vested Restricted Units, a Participant's Separation from Service from the Company and its Subsidiaries on or following the date the Participant has both attained age 55 and completed five (5) years of continuous service with the Company and/or a Subsidiary since the

Participant's most recent date of hire. For avoidance of doubt, whether a Participant is entitled to continued vesting after Retirement shall be determined under Section 8.3.

2.24 "Separation from Service" of "Separates from Service" means cessation of service with the Company and its Subsidiaries within the meaning of Section 409A of the Code.

2.25 "Subsidiary" means the parent, subsidiaries and affiliates of the Company, as determined by the Committee.

2.26 "Unit" means a fixed percentage equal to 1/157,851,603 of the overall value of LMHC as a going concern. Units are intended to qualify as "mutual company units" under Treasury Regulation Section 1.409A-1(a)(5)(iii)(C).

2.27 "Valuation Date" means April 1 of each calendar year.

2.28 "Value per Unit" means the amount determined in accordance with Section 10.

2.29 "Vesting Date" shall have the meaning set forth in Section 7.1.

Section 3. <u>Administration</u>.

The Plan shall be administered by the Company. The Company shall have the authority in its discretion: (a) to determine the Value per Unit, (b) to select the employees to whom Units may be granted hereunder, (c) to determine the number of Units covered by each grant hereunder, (d) to determine whether, to what extent, and under what circumstances a Unit may be settled in cash, securities or other property, (e) to approve forms of award documents under which the Units will be granted, (f) to determine, in a manner consistent with the terms of the Plan, the terms and conditions of any Unit granted hereunder, based on such factors as the Company, in its sole discretion, shall determine, (g) to construe and interpret the terms of the Plan and award documents, (h) to correct any defect, supply any omission, or reconcile any inconsistency in the Plan or any award document in the manner and to the extent it shall deem desirable to carry out the purposes of the Plan, (i) to prescribe, amend, and rescind rules and regulations relating to the Plan, (j) to authorize withholding arrangements pursuant to Section 12.6, (k) to authorize any person to execute on behalf of the Company any instrument required to effect the grant of a Unit previously granted by the Company, (l) to accelerate the vesting of any Unit, (m) to prescribe the Post-Employment Restriction Agreement, if any, applicable to a Participant and (n) to make all other determinations and take all other action described in the Plan as the Company otherwise deems necessary or advisable for administering the Plan and effectuating its purposes. Determinations of the Company shall be final and binding on all parties with respect to all matters relating to the Plan. Only the Committee shall be authorized to act on the Company's behalf with respect to the exercise of discretion as may be required or permitted under the Plan; provided, however, that the Chief Executive Officer is authorized to grant Restricted Units to the extent provided under Section 4 below, to determine the terms of any Post-Employment Restriction Agreement (other than one applying to him), to establish administrative procedures for redeeming Restricted Units and to take such other actions as may be specifically delegated by the Committee to him.

Section 4.     Eligibility.

An employee at or above the level of Management A and other key employees of the Company or any Subsidiary are eligible to receive an award under the Plan. The Committee shall select, in its sole discretion, which eligible employees shall become Participants and when and how Restricted Units are to be granted to Participants. Notwithstanding the foregoing, to the extent permitted by applicable law, the Committee may delegate to the Chief Executive Officer the power: (a) to grant Restricted Units to any employee other than an employee who is both an officer and has annual compensation in excess of $150,000, (b) to determine the number of Restricted Units that may be granted to such employees, and (c) to determine the terms and conditions of any such awards.

Section 5.     Restrictions on Grant of Restricted Units.

    5.1     Authority. Restricted Units shall be subject to such terms and conditions, in addition to the terms and conditions set forth in the Plan, as the Committee, in its sole discretion, shall determine.

    5.2     Limit on Number of Restricted Units. The maximum aggregate number of Restricted Units that may be outstanding at any time under the Plan, when added to Restricted Units outstanding under the DPDCP and Appreciation Units that are outstanding under the EPP, shall not exceed 20,000,000 (twenty million). The maximum aggregate number of Restricted Units that may be awarded under the Plan in any calendar year, when added to Restricted Units awarded under the DPDCP and Appreciation Units awarded under the EPP for such calendar year, shall not exceed 4,000,000 (four million).

Section 6.     Restricted Unit Account.

Restricted Units granted to a Participant shall be credited to a Restricted Unit Account established and maintained for such Participant. A Participant's Restricted Unit Account shall be adjusted to reflect: (a) Restricted Units that are transferred to the Alternative Investment Account under Section 9 below, (b) Restricted Units that are converted into cash and paid to the Participant under Section 8 below and (c) Restricted Units that are forfeited under either Section 8.5 or Section 11 below. A Participant's Restricted Unit Account is solely for accounting purposes and shall not require a segregation of any Company assets.

Section 7.     Vesting.

    7.1     General. Subject to the provisions of this Section 7 and Section 11 of the Plan, Restricted Units granted to a Participant shall vest on each Vesting Date according to the following schedule, provided that such Participant remains employed as an employee by the Company or a Subsidiary on such Vesting Date:

| *Vesting Dates* | *Cumulative Vested Percentage* |
| --- | --- |
| First Anniversary of Grant Date | 25% |
| Second Anniversary of Grant Date | 50% |
| Third Anniversary of Grant Date | 75% |
| Fourth Anniversary of Grant Date | 100% |

The Grant Date for purposes of determining the Vesting Dates for Restricted Units under this Section 7.1 shall be deemed to be April 1 of the year of grant.

7.2   Vesting Upon Death. Notwithstanding the provisions of Section 7.1, a Participant's outstanding unvested Restricted Units shall immediately vest in the event of either (a) his termination of employment hereunder due to death or (b) his death after Retirement provided that such Participant had previously executed a Post-Employment Restriction Agreement and otherwise satisfied the provisions of Section 8.3 below.

7.3   Vesting Upon Disability. In the event a Participant becomes Disabled, the Committee may, in its sole discretion and upon the recommendation of the Chief Executive Officer of the Company, accelerate the vesting of any or all outstanding unvested Restricted Units.

7.4   Special Rule for Certain Participants who Terminate Employment in the Year of Grant. If a Participant dies, Retires or becomes Disabled, the number of Restricted Units, if any, granted to him during the calendar year of any such event (the "termination year") shall be equal to the number of Restricted Units set forth in such Participant's award document for the termination year multiplied by the earned percentage, which shall be equal to (i) 25% times (ii) the number of completed calendar quarters of active employment with the Company and its Subsidiaries during the termination year. For avoidance of doubt, this Section 7.4 shall apply prior to the accelerated vesting provisions under Sections 7.2 and 7.3.

Section 8.   Time and Form of Cash Payments for Restricted Units.

8.1   General. Subject to the terms and conditions set forth in this Section 8, Section 11, Section 15 and Section 16 below, a Participant may elect the time and form of the cash payment relating to a Restricted Unit. An election under this Section 8.1 must be made during the Deferral/Reallocation Window Period in the calendar year immediately preceding the Restricted Unit's Grant Date; provided, however, in the event such Restricted Unit is the Participant's initial grant of Restricted Units under the Plan, the immediately preceding election provision shall not apply, but rather the Participant shall be deemed to have elected a lump sum cash payment on the fifth anniversary of the April 1 of the year of the initial grant. Any election under this Section 8 must be made in the manner as may be prescribed from time to time by the Company consistent with the requirements of Section 409A of the Code. A Participant's failure to make a timely election with respect to a Restricted Unit shall be deemed to be an election to receive a lump sum payment on the fifth anniversary following the Grant Date of such Restricted Unit equal to its Value per Unit at that time. Notwithstanding anything to the contrary in this Section 8, no payment shall be made with respect to a Restricted Unit unless it has first vested under Section 7 above.

(a)   Fixed Date Election. A Participant may elect to receive a lump sum cash payment with respect to a Restricted Unit based on a fixed date that is at least five (5) years after the Grant Date. Subject to Section 8.2 below, a lump sum payment under this Section 8.1(a) shall be made as soon as administratively practicable after the last day of the Deferral/Reallocation Window Period that occurs immediately after the fixed date elected by the Participant, and the amount of the payment shall be equal to the Restricted Unit's Value per Unit as of the immediately preceding Valuation Date. Notwithstanding the foregoing, if a Participant's Retirement occurs prior to the date elected under this Section 8.1(a) with respect to a Restricted Unit, payment with respect to such

Restricted Unit shall instead be made under Section 8.1(b). An installment form of payment may not be elected under this Section 8.1(a).

(b)  Retirement Election. A Participant may elect to commence payment with respect to a Restricted Unit on account of Retirement. An election under this Section 8.1(b) may specify either a single lump sum payment or annual installment payments (not to exceed fifteen (15) years) as the form of payment. Subject to Sections 8.2 and 8.3 below, payment shall commence as soon as administratively practicable after the last day of the Deferral/Reallocation Window Period occurring immediately following the Participant's Retirement. If a single lump sum payment was elected, the amount to be paid shall equal the Value per Unit as of the immediately preceding Valuation Date. If installment payments were elected, the amount to be paid in each installment shall be based on the Value per Unit as of the Valuation Date immediately preceding the then currently scheduled installment payment. Notwithstanding the foregoing, if more than five annual installments have been elected under this Section 8.1(b), Restricted Units that have not been cashed out as of the last day of the fifth Deferral/Reallocation Window Period immediately following the year of the Participant's Retirement shall be converted into cash based on their Value per Unit and transferred to the Alternative Investment Account and distributions from such account shall continue to be made out of that account for the balance of the installment period under Section 9 below.

8.2  Change to Deferral Elections. A Participant may elect to change the deferral period, the payment form election or both made with respect to a Restricted Unit previously granted under Section 8.1 in such manner as may be prescribed by the Administrator from time to time, subject to the following rules:

(a)  any change shall not take effect until twelve (12) months after the date on which the election is received by the Administrator;

(b)  except for payments made on account of the Participant's death, the payments with respect to which such election is made shall be deferred for a period of not less than five (5) years from the date such payment would otherwise have been made (or in the case of installment payments, five (5) years from the date the first amount was scheduled to be paid);

(c)  any such election shall not be made less than twelve (12) months before the date the payment is scheduled to be paid (or in the case of installment payments, twelve (12) months before the first amount was scheduled to be paid); and

(d)  any change as to the form of payment shall not result in the acceleration of payments hereunder unless otherwise allowed for under IRS regulations, revenue rulings, notices or other guidance.

8.3  Special Rules for Retirement Prior to Scheduled Vesting Date. If a Participant has a Separation from Service due to Retirement (hereinafter referred to as a "Retiree" in this Section 8.3), the following additional provisions shall apply:

(a)  Restricted Units that are unvested as of Retirement shall remain outstanding and continue to vest under the vesting schedule set forth in Section 7.1 above as if such Participant had remained employed with the Company and its Subsidiaries provided that (i) the Retiree

voluntarily terminated employment with the Company's consent, (ii) the Retiree executes, in connection with Retirement, a Post-Employment Restriction Agreement and (iii) the Retiree fully complies with the Post-Employment Restriction Agreement at all times. A Retiree shall not be entitled to continued vesting under this Section 8.3(a) in the event of a failure to comply with any of these requirements. For avoidance of doubt, a Participant whose employment is terminated by the Company, either with or without cause (as described in Section 8.5 below) shall in no event be entitled to continued vesting under this Section 8.3 and any of his Restricted Units that are then unvested shall be forfeited under Section 11 below.

(b) A Retiree shall be not be entitled to continued vesting under this Section 8.3 in the event of a failure to comply with any of the requirements set forth in clauses (i), (ii) or (iii) of Section 8.3(a) as determined by the Company. For avoidance of doubt, a failure to comply with any such requirements shall in no event be interpreted to change the time or form of payment of a Retiree's benefits under the Plan.

(c) A Restricted Unit that vests under Section 8.3(a) shall be converted into the right to receive a cash payment and be paid in accordance with the form of payment elected by the Participant in Section 8.1(b) (or, in the event that there is no form of payment election, in a single lump sum) as follows:

(i) If a single lump sum payment was elected, the Retiree shall receive such payment as soon as administratively practicable following the last day of the Deferral/Reallocation Window Period immediately following such Vesting Date, and the amount to be paid shall be based on the Value per Unit established as of the beginning of such Deferral/Reallocation Window Period.

(ii) If installment payments were elected, the Retiree shall commence receiving payments relating to such vested Restricted Unit commencing as soon as administratively practicable following the last day of the Deferral/Reallocation Window Period that immediately follows the applicable Vesting Date based on the Value per Unit established as of the beginning of such Deferral/Reallocation Window Period on a pro-rata basis over the remaining installment payment schedule that began on the Retiree's Retirement. For the avoidance of doubt, the value of installment payments after the first shall be determined in accordance with the installment payment valuation provisions of Section 8.1(b).

8.4 Death. If a Participant dies while vested Restricted Units remain outstanding in the Participant's Restricted Unit Account, including Restricted Units which vest by reason of the Participant's death under Section 7.2, a single lump sum cash payment shall be made to the Participant's Beneficiary as soon as administratively practicable after the last day of the Deferral/Reallocation Window Period that occurs immediately after a Participant's death, and the amount of the payment shall be based on the Value per Unit as of the Valuation Date immediately preceding (or coinciding with) the Participant's death. A Participant may change the Beneficiary at any time by providing notice of such change to the Administrator on a form acceptable to the Administrator. For avoidance of doubt, a change to the Beneficiary shall not result in a change to the time or form of payment.

8.5 Special Rules for Termination of Employment for Cause. Notwithstanding any other provision of this Section 8, if the Company or one of its Subsidiaries terminates a Participant's

employment for "cause", the Company shall immediately forfeit all of such Participant's Restricted Units regardless of whether such awards had previously become vested under Section 7 above. In the event that evidence is acquired after employment termination that a Participant acted or failed to act in such a manner that would have provided grounds for a "cause" termination, then the Company shall have the right to immediately forfeit any then outstanding Restricted Units and/or recover any amounts received (determined on a before-tax basis) by such Participant under Section 8 on or after any such action or inaction.

8.6  Separation from Service for Reasons other than Death or Retirement. A Participant who Separates from Service other than on account of Retirement or death shall receive payment for his vested Restricted Units under this Section 8.6. The form of payment shall be a single lump sum notwithstanding any prior election by the Participant. The lump sum payment shall be made as soon as administratively practicable after the last day of the Deferral/Reallocation Window Period occurring immediately following the Participant's Separation from Service. The amount of the lump sum payment shall be determined based on the Value per Unit as of the immediately preceding Valuation Date. For avoidance of doubt, a Participant who Separates from Service after becoming Disabled shall have his Restricted Units that are then vested paid under this Section 8.6. Nothing in this Section 8.6 shall be construed to require any payment to a Participant whose employment is terminated for cause under Section 8.5 above.

8.7  Payment as Soon as Administratively Practicable. Use of the phrase "as soon as administratively practicable" requires that payment be made not later than the end of the calendar year in which a payment event occurs under this Section 8 unless further delay is permitted under final regulations or other guidance issued under Section 409A of the Code.

Section 9.  Alternative Investment Account.

9.1  General. The Administrator shall establish and maintain a hypothetical Alternative Investment Account for each Participant. Subaccounts shall be maintained as deemed necessary by the Administrator. A Participant may annually elect during the applicable Deferral/Reallocation Window Period to allocate to an Alternative Investment Account all or part of the value of the Participant's vested Restricted Units. In addition, during the fifth Deferral/Reallocation Window Period following the year of the Participant's Retirement, the value of any Restricted Units remaining in the Participant's Restricted Unit Account shall automatically be allocated to an Alternative Investment Account on the Participant's behalf. Amounts allocated to a Participant's Alternative Investment Account shall be deemed to be invested in one or more Earnings Measures selected by the Participant under rules established by the Administrator from time to time. All allocations shall be deemed to occur as of the last day of the Deferral/Reallocation Window Period. In the absence of a properly filed investment election by a Participant, amounts allocated to a Participant's Alternative Investment Account shall be deemed to be invested in an Earnings Measure designated from time to time by the Administrator as the default fund for Alternative Investment Accounts. Alternative Investment Accounts and subaccounts are maintained strictly for accounting purposes and do not represent separate funding of the benefits under the Plan. Any reference to "allocations to", "payments to" or "payments from" such accounts, or similar phrases, are for convenience only and do not reflect any separate funding of the benefits under the Plan.

9.2  Earnings. The Administrator, with the approval of the Chief Executive Officer of the Company, shall designate the Earnings Measure or Earnings Measures to be used for purposes

of the Alternative Investment Accounts under the Plan in its sole discretion. Earnings Measures may be made available to all Participants or to certain classes of Participants. To the extent permitted under the Plan and rules established by the Administrator, each Participant shall specify the allocation of his or her Alternative Investment Account among the Earnings Measures available under the Plan. The Administrator may, in its discretion, permit separate allocations with respect to current balances and future contributions. A Participant's selection of an Earnings Measure will have no bearing on the actual investment or segregation of the Company's assets, but will be used as the basis for making adjustments to such Participant's Alternative Investment Account at such time or times as determined by the Administrator. A Participant can change the allocation of his or her Alternative Investment Account among Earnings Measures at such time, and in such manner, as determined by the Administrator. The Administrator, with the approval of the Chief Executive Officer of the Company, may change the Earnings Measures available under the Plan at any time in its absolute discretion.

       9.3    Accounting. The Administrator shall adjust the balance of the Alternative Investment Accounts as of the last day of each calendar quarter. The Administrator shall from time to time establish such rules with respect to the timing of the allocation of notional gains and losses to Participant Alternative Investment Accounts as it deems necessary or desirable in its sole and absolute discretion.

       9.4    Distribution of Alternative Investment Account. Nothing in this Section 9 shall change the time or form of payment with respect to a Restricted Unit. The portion of a Participant's Alternative Investment Account that is attributable to a Restricted Unit shall be subject to the provisions of Section 8 above as if were a Restricted Unit, including but not limited to forfeiture under Section 8.5 due to employment termination by the Company or its subsidiaries for cause. The amount to be distributed with respect to a Participant's Alternative Investment Account on a payment date under Section 8 shall be based on the amount credited to it as of the last day of the calendar quarter immediately preceding the payment date. Any change to a Participant's deferral election for a Restricted Unit shall also apply to the time and/or form of payment of the Participant's Alternative Investment Account and such changes shall be subject to the same restrictions as apply to changes in the time and/or form of payment a Restricted Unit under Section 8.2.

Section 10.    Valuation of Units.

For all purposes of the Plan, the Value per Unit as of a Valuation Date equals:

**BOOK VALUE – AOCI**
**TOTAL UNITS**

determined based on LMHC's financial statements for the immediately preceding fiscal year. For example, the Value per Unit on the April 1, 2013 Valuation Date shall be determined based on Book Value and AOCI (if any) as reported in LMHC's financial statements for the fiscal year ending December 31, 2012. Notwithstanding the above, the Committee may, in its sole discretion and upon the recommendation of the Chief Executive Officer of the Company, amend the valuation formula under this Section 10 at any time on a prospective basis.

Section 11.  Forfeiture.

Unvested Restricted Units shall be immediately forfeited if either a Participant has a Separation from Service as described in Section 8.6 above or a Retiree fails to qualify for continued vesting after Retirement as set forth in Section 8.3(a) above. A Participant's Restricted Units, whether vested or unvested, shall be immediately forfeited if a Participant's employment is terminated by the Company for cause under Section 8.5 above. Restricted Units that become vested or are eligible to vest under Section 8.3(a) above shall be immediately forfeited if the Participant breaches a material provision of a Post-Employment Restriction Agreement. The Committee shall have the right, in its sole discretion for any reason, to forfeit some or all of a Participant's Restricted Units that are then unvested if the Participant no longer meets the eligibility requirements of Section 4 of the Plan for any reason.

Section 12.  Miscellaneous.

    12.1  No Right to Award. No employee or other person shall have any claim or right to be granted Restricted Units under the Plan.

    12.2  No Guarantee of Employment. Nothing contained herein shall give any Participant the right to be retained in the employ of the Company or any Subsidiary or to interfere with the right of the Company or any Subsidiary to discharge the Participant, nor shall it give the Company or any Subsidiary the right to require the Participant to remain in its respective employ or to interfere with the Participant's right to terminate employment at any time.

    12.3  Non-alienation. No benefit payable under the Plan shall be subject in any manner to alienation, sale, transfer, assignment, pledge, attachment, or encumbrance of any kind. Benefits payable under the Plan shall not be subject to domestic relations orders, including Qualified Domestic Relations Orders.

    12.4  Number. Where appropriate in context, the singular includes the plural, and the plural includes the singular.

    12.5  Applicable Law. The Plan and all rights hereunder shall be governed by the laws of the Commonwealth of Massachusetts, except to the extent that such laws are preempted by the laws of the United States.

    12.6  Tax Withholdings. The Company shall have the right to deduct any required withholding taxes from any payment made under the Plan. The Company shall not be obligated to pay, or reimburse the Participant or Beneficiary for, any income or other taxes or penalties that may be imposed on the Participant or Beneficiary as a result of this Plan by the Internal Revenue Service or any state or other taxing authority.

    12.7  Funding; Rights of Participants and Other Persons. The Plan shall at all times be entirely unfunded, and no provision shall at any time be made with respect to segregating assets of the Company for payment of any benefits hereunder. No Participant or other person shall have any interest in any particular assets of the Company by reason of the right to receive a benefit under the Plan and any such Participant or other person shall have only the rights of a general unsecured creditor of the Company with respect to any rights under the Plan.

Section 13.     Amendment of the Plan.

The Company, by action of the Committee, may alter or amend the Plan from time to time in its discretion. No amendment to the Plan may alter, impair or reduce the number of Restricted Units granted under the Plan prior to the effective date of such amendment without the written consent of any affected Participant; provided, however that nothing in the Plan shall be construed to prohibit the Committee from (a) changing the valuation formula as provided in Section 10, (b) making or providing for adjustments to Restricted Units or other provisions of the Plan as the Committee, in its sole discretion, may in good faith determine to be equitably required in order to prevent dilution or enlargement of the rights of Participants that otherwise would result from a corporate transaction or event to the extent that such modification would not be considered a material modification for purposes of Section 409A of the Code, or (c) substituting for any or all outstanding Restricted Units such alternative consideration in connection with any such corporate transaction or event as it may in good faith determine to be equitable under the circumstances and may require in connection therewith the cancellation or surrender of all Restricted Units so replaced.

Section 14.     Termination of the Plan.

The Company may terminate the Plan at any time by action of the Committee. Unless sooner terminated by the Committee, the Plan shall terminate on April 1, 2022. As of the effective date of any such termination:

      (a)     No further Restricted Units shall be credited to Restricted Unit Accounts hereunder;

      (b)     Amounts then credited to a Participant's Alternative Investment Fund Account shall continue to be credited with investment experience from the Alternative Investment Fund in accordance with Section 9; and

      (c)     Distribution shall be made in accordance with a Participant's elections and the provisions of Section 8 of the Plan (with respect to a Participant's outstanding vested Restricted Units) and Section 9 (with respect to amounts allocated to a Participant's Alternative Investment Account).

Section 15.     Section 409A.

The Plan is intended to comply and shall be interpreted and construed in a manner consistent with the provisions of Section 409A of the Code, including any rule or regulation promulgated thereunder. If any provision of the Plan would cause an amount deferred hereunder to be subject to tax under the Code prior to the time such amount is paid to a Participant, such provision shall, without the necessity of further action by the Board or the Committee, be deemed null and void. For avoidance of doubt, the election and time and form of payment rules set forth in the Plan apply separately to each Restricted Unit.

Section 16.     Delayed Payment for Specified Employees.

The provisions of this Section 16 shall only apply to Participants if a member of the Company's controlled group (as defined under Section 414(b) of the Code) becomes publicly traded on an established securities market or otherwise. If a Participant is a "specified employee" for purposes of

Section 409A, as determined under Liberty Mutual Group Inc.'s policy for determining specified employees, on Separation from Service, each payment provided under the Plan that is to be paid or provided as a result of a Separation from Service (including Retirement), and that would otherwise be paid or provided at any time (a "Scheduled Time") that is on or before the date (the "Six Month Date") that is exactly six months after a Separation from Service will not be paid or provided at the Scheduled Time but will be accumulated (as described below) through the Six Month Date and paid or provided as soon as administratively feasible following the first business day after the Six Month Date, except that if such Participant dies before the Six Month Date, such payments will be accumulated only through the date of the Participant's death and thereafter paid or provided to the Participant's estate as soon as reasonably practicable, but not later than sixty days after the date of death. The amounts payable to a specified employee that are delayed due to the restriction in this Section 16 shall be adjusted for earnings until the Valuation Date immediately preceding the date that such amounts are paid hereunder. Notwithstanding the immediately preceding sentence, no adjustment shall be required if there is no new Valuation Date before the required time for payment under this Section 16.

Section 17.    Claims Procedures.

    17.1    Review of Application for Benefits. The Company shall notify a Participant (or, if applicable, a Beneficiary) in writing, within 90 days of the receipt of a written application for benefits, of such Participant's or Beneficiary's eligibility or ineligibility for benefits under this Plan.

    17.2    Review of Denied Claim. If the Company determines that a Participant or Beneficiary is not eligible for any benefits or for full benefits, the notice described in Section 17.1 shall set forth the following:

        (a)    the specific reasons for such denial;

        (b)    a specific reference to the provisions of this Plan on which the denial is based;

        (c)    a description of any additional information or material necessary for the claimant to perfect a claim and a description of why it is needed; and

        (d)    an explanation of the Plan's claim review procedure and other appropriate information as to the steps to be taken if the Participant or Beneficiary wishes to have the claim reviewed.

The Participant or Beneficiary shall have the right to review pertinent documents.

If the Company determines that there are special circumstances requiring additional time to make a decision, the Company shall notify the Participant or Beneficiary of the special circumstances and the date by which a decision is expected to be made and may extend the time for up to an additional 90 days.

If a Participant or Beneficiary is determined by the Company to be ineligible for benefits, or if the Participant or Beneficiary believes that he or she is entitled to greater or different benefits, the Participant or Beneficiary shall have the opportunity to have such claim reviewed by the Company by filing a petition for review with the Company within 60 days after receipt of the notice issued by

the Company. Such petition shall state the specific reasons the Participant or Beneficiary believes he or she is entitled to greater or different benefits. Within 60 days after receipt by the Company of such petition, the Company shall afford the Participant or Beneficiary an opportunity to present his or her position to the Company orally or in writing. The Company shall notify the Participant or Beneficiary of its decision in writing within the 60-day period, stating specifically the basis of its decision written in a manner calculated to be understood by the Participant or Beneficiary and the specific provisions of this Plan on which the decision is based. If, because of the need for a hearing, the 60-day period is not sufficient, such period may be extended for up to another 60 days, but notice of this extension must be given to the Participant or Beneficiary within the first 60-day period.

17.3   Exhaustion/Limitation of Actions. A Participant or Beneficiary shall comply with the claims procedure set forth in Section 17.2 prior to filing any action in federal or state court with respect to a claim. Any provision of the Plan to the contrary notwithstanding, a claimant shall be barred from filing any action in federal or state court with respect to a claim if such action is not filed within one year from the date the Company denies the claim on review in accordance with Section 17.2.

Section 18.   Effective Date.

This amendment and restatement of the Plan is effective as of January 1, 2012 and shall apply to any person employed by the Company or its Subsidiaries on or after such date. The Plan as in effect immediately prior to this amendment and restatement shall apply to Participants who Separated from Service or died prior to January 1, 2012.

[Signature Page to Follow]

IN WITNESS WHEREOF, Liberty Mutual Group Inc. has caused this instrument to be executed by its duly authorized officer this 20 day of December, 2012 on behalf of each Company.

**LIBERTY MUTUAL GROUP INC.**

*Melanie Foley*
Melanie Foley
Senior Vice President
Manager, Human Resources & Administration