# Exhibit 2

Liberty Mutual Group Inc.
2012 Executive Partnership Plan

Effective January 1, 2012

Section 1.   Purpose.

The purpose of the Liberty Mutual Group Inc. 2012 Executive Partnership Plan (the "Plan") is to provide an incentive to participating executives to work together in partnership to improve the Company's overall long term performance. To accomplish this goal, the Plan provides certain key employees of Liberty Mutual Group Inc. and its Subsidiaries the right to participate in the increase in LMHC's overall enterprise value through the award of Appreciation Units as further described below. The effective date of the Plan is January 1, 2012.

Section 2.   Definitions.

For purposes of the Plan, the following terms shall be defined as set forth below:

2.1   "Administrator" means the Company.

2.2   "AOCI" means accumulated other comprehensive income, determined in accordance with generally accepted accounting principles.

2.3   "Appreciation Unit" means a right to receive a cash payment based solely on the appreciation of a Unit on and after the Grant Date under the terms of the Plan as described in Section 7.1 of the Plan.

2.4   "Beneficiary" means the person selected by a Participant pursuant to such rules and conditions as established by the Administrator from time to time who is entitled to exercise such Participant's Appreciation Units that may be unexercised as of the date of the Participant's death. In the event a Participant dies without designating a Beneficiary, or in the event no designated Beneficiary survives the Participant, the Beneficiary shall be the Participant's estate.

2.5   "Board" means the Board of Directors of LMHC.

2.6   "Book Value" means, with respect to a fiscal year, LMHC's total assets less LMHC's total liabilities, determined in accordance with generally accepted accounting principles, as of the last day of such year.

2.7   "Code" means the Internal Revenue Code of 1986, as amended.

2.8   "Committee" means the Compensation Committee of the Board of Directors of Liberty Mutual Holding Company Inc. If at any time no Committee shall be in office, then the functions of the Committee specified in the Plan shall be exercised by the Board.

2.9   "Company" means Liberty Mutual Group Inc.

2.10 "Disability" or "Disabled" means a physical or mental condition of an apparently permanent nature which prevents a Participant from performing the principal duties of his or her regular occupation with the Company or a Subsidiary, as determined to the sole satisfaction of the Committee.

2.11 "DPDCP" means the Liberty Mutual Holding Company Inc. Director Partnership Deferred Compensation Plan, as may be amended from time to time.

2.12 "EPDCP" means the Liberty Mutual Group Inc. Executive Partnership Deferred Compensation Plan, as may be amended from time to time.

2.13 "Grant Date" means the date on which the Committee grants Appreciation Units under the Plan. Unless indicated otherwise under the Plan or by action of the Committee, the Grant Date for purposes of Appreciation Units granted during a fiscal year shall be deemed to be April 1 of such year.

2.14 "LMHC" means Liberty Mutual Holding Company Inc.

2.15 "Participant" means an employee or former employee who has been awarded Appreciation Units under the Plan.

2.16 "Plan" means the Liberty Mutual Group Inc. 2012 Executive Partnership Plan, as amended from time to time.

2.17 "Post-Employment Restriction Agreement" means an agreement imposing restrictions and obligations on a Participant upon and after Retirement, including but not limited to non-competition and non-solicitation provisions. The Company shall impose such terms and conditions under Post-Employment Restriction Agreements as it considers reasonable in its sole discretion, which may vary among Participants based on the facts and circumstances.

2.18 "Redemption Date" means the date on which a Participant's Appreciation Units are redeemed for cash payment under Section 7 of the Plan.

2.19 "Redemption Window Period" means April 1 through June 30 of each calendar year.

2.20 "Restricted Unit" means a "Restricted Unit" as defined under the terms of the EPDCP or DPDCP.

2.21 "Retirement" or "Retires" means voluntary termination of a Participant's employment with the Company and its Subsidiaries on or following the date the Participant has both attained age 55 and completed five (5) years of continuous service with the Company and/or a Subsidiary since the Participant's most recent date of hire.

2.22 "Subsidiary" means the parent, subsidiaries and affiliates of the Company, as determined by the Committee.

2.23    "Unit" means a fixed percentage equal to 1/157,851,603 of the overall value of LMHC as a going concern. Units are intended to qualify as "mutual company units" under Treasury Regulation Section 1.409A-1(a)(5)(iii)(C).

2.24    "Valuation Date" means April 1 of each calendar year.

2.25    "Value per Unit" means the amount determined in accordance with Section 8.

2.26    "Vesting Date" shall have the meaning set forth in Section 6.1.

Section 3.    Administration.

The Plan shall be administered by the Company. The Company shall have the authority in its discretion: (a) to determine the Value per Unit, (b) to select the employees to whom Units may be granted hereunder, (c) to determine the number of Units covered by each grant hereunder, (d) to determine whether, to what extent, and under what circumstances a Unit may be settled in cash, securities or other property, (e) to approve forms of award documents under which the Units will be granted, (f) to determine, in a manner consistent with the terms of the Plan, the terms and conditions of any Unit granted hereunder, based on such factors as the Company, in its sole discretion, shall determine, (g) to construe and interpret the terms of the Plan and award documents, (h) to correct any defect, supply any omission, or reconcile any inconsistency in the Plan or any award document in the manner and to the extent it shall deem desirable to carry out the purposes of the Plan, (i) to prescribe, amend, and rescind rules and regulations relating to the Plan, (j) to authorize withholding arrangements pursuant to Section 10.6, (k) to authorize any person to execute on behalf of the Company any instrument required to effect the grant of a Unit previously granted by the Company, (l) to accelerate the vesting of any Unit, (m) to prescribe the Post-Employment Restriction Agreement, if any, applicable to a Participant and (n) to make all other determinations and take all other action described in the Plan as the Company otherwise deems necessary or advisable for administering the Plan and effectuating its purposes. Determinations of the Company shall be final and binding on all parties with respect to all matters relating to the Plan. Only the Committee shall be authorized to act on the Company's behalf with respect to the exercise of discretion as may be required or permitted under the Plan; provided, however, that the Chief Executive Officer is authorized to grant Appreciation Units to the extent provided under Section 4 below, to determine the terms of any Post-Employment Restriction Agreement (other than one applying to him), to establish administrative procedures for redeeming Appreciation Units and to take such other actions as may be specifically delegated by the Committee to him.

Section 4.    Eligibility.

An employee at or above the level of Management A and other key employees of the Company or any Subsidiary are eligible to receive an award under the Plan. The Committee shall select, in its sole discretion, which eligible employees shall become Participants and when and how Appreciation Units are to be granted to Participants. Notwithstanding the foregoing, to the extent permitted by applicable law, the Committee may delegate to the Chief Executive Officer the power (a) to grant Appreciation Units to any employee other than an employee who is both an officer and has annual

compensation in excess of $150,000, (b) to determine the number of Appreciation Units that may be granted to such employees, and (c) to determine the terms and conditions of any such awards.

Section 5.     Restrictions on Grant of Appreciation Units.

    5.1     Authority. Appreciation Units shall be subject to such terms and conditions, in addition to the terms and conditions set forth in the Plan, as the Committee, in its sole discretion, shall determine.

    5.2     Limit on Number of Appreciation Units. The maximum aggregate number of Appreciation Units that may be outstanding at any time under the Plan, when added to Restricted Units that are outstanding under the EPDCP and DPDCP, shall not exceed 20,000,000 (twenty million). The maximum aggregate number of Appreciation Units that may be awarded under the Plan in any calendar year, when added to Restricted Units awarded under the EPDCP and DPDCP for such calendar year, shall not exceed 4,000,000 (four million).

    5.3     Section 409A Stock Rights Exemption. It is intended that no benefits provided under the Plan shall constitute "deferred compensation" within the meaning of Section 409A of the Code. Appreciation Units subject to the Plan shall be granted, administered and interpreted consistent with the requirements for the "stock rights" exemption under Treasury Regulation Section 1.409A-1(b)(5).

    5.4     Grant Ownership Guidelines. The redemption of Appreciation Units that are granted under the Plan shall be subject to the Company's grant ownership guidelines, as such guidelines may exist from time to time. For the avoidance of doubt, the grant ownership guidelines shall in no event be interpreted to require the holding of Appreciation Units later than any date on which those Appreciation Units are automatically redeemed under Section 7.

Section 6.     Vesting.

    6.1     General. Subject to the provisions of this Section 6 and Section 9 of the Plan, Appreciation Units granted to a Participant shall vest on each Vesting Date according to the following schedule, provided that such Participant remains employed as an employee by the Company or a Subsidiary on such Vesting Date:

| *Vesting Dates* | *Cumulative Vested Percentage* |
| --- | --- |
| First Anniversary of Grant Date | 25% |
| Second Anniversary of Grant Date | 50% |
| Third Anniversary of Grant Date | 75% |
| Fourth Anniversary of Grant Date | 100% |

The Grant Date for purposes of determining the Vesting Dates for Appreciation Units under this Section 6.1 shall be deemed to be April 1 of the year of grant.

    6.2     Vesting Upon Death. Notwithstanding the provisions of Section 6.1, a Participant's outstanding unvested Appreciation Units shall immediately vest in the event of either

(a) his termination of employment hereunder due to death or (b) his death after Retirement provided that such Participant had previously executed a Post-Employment Restriction Agreement and otherwise satisfied the provisions of Section 7.2 below.

  6.3  <u>Vesting Upon Disability</u>. In the event a Participant becomes permanently Disabled, the Committee may, in its sole discretion and upon the recommendation of the Chief Executive Officer of the Company, accelerate the vesting of any or all outstanding unvested Appreciation Units.

  6.4  <u>Special Rule for Certain Participants who Terminate Employment in the Year of Grant</u>. If a Participant dies, Retires or becomes Disabled, the number of Appreciation Units, if any, granted to him during the calendar year of any such event (the "termination year") shall be equal to the number of Appreciation Units set forth in such Participant's award document for the termination year multiplied by the earned percentage, which shall be equal to (i) 25% times (ii) the number of completed calendar quarters of active employment with the Company and its Subsidiaries during the termination year. For avoidance of doubt, this Section 6.4 shall apply prior to the accelerated vesting provisions under Sections 6.2 and 6.3.

Section 7.  <u>Redemption of Vested Appreciation Units</u>.

  7.1  <u>General</u>. Subject to the special rules set forth below in this Section 7 and Section 9:

  (a) A Participant may redeem vested Appreciation Units for a cash payment by making an election during a Redemption Window Period subject to such rules as may be established by the Administrator from time to time; provided, however, that in no event shall any Appreciation Unit be redeemed later than the tenth anniversary of the Grant Date. A Participant shall not be allowed to redeem an unvested or forfeited Appreciation Unit.

  (b) The amount to be paid upon redeeming an Appreciation Unit shall be equal to the difference between (i) the Value per Unit as determined on the Valuation Date that coincides with the beginning of the then current Redemption Window Period less (ii) the Value per Unit on the Grant Date as set forth in the Participant's award document for such Appreciation Right. The Company shall pay such amount as soon as administratively practicable immediately after the end of the Redemption Window Period during which such Appreciation Units are redeemed.

  (c) Any vested Appreciation Units that are outstanding as of the tenth anniversary of the Grant Date shall either be (a) promptly forfeited if the Value per Unit as of the Valuation Date that coincides with such tenth anniversary is equal to or less than the Value per Unit on the Grant Date as set forth in the Participant's award document for such Appreciation Units, or (b) redeemed for a cash payment as described in (b) above to the extent that the Value per Unit as of the Valuation Date that coincides with such tenth anniversary is greater than the Value per Unit on the Grant Date as set forth in the Participant's award document for such Appreciation Rights, without the requirement of any further action by the Participant (or if applicable, the Beneficiary).

7.2     **Special Rules for Redemption Following Termination of Employment Due to Retirement.** If a Participant terminates employment with the Company or any Subsidiary due to Retirement (hereinafter referred to as a "Retiree" in this Section 7.2), the following additional provisions shall apply:

(a)     Appreciation Units that are unvested as of Retirement shall remain outstanding and continue to vest under the vesting schedule set forth in Section 6.1 above as if such Participant had remained employed with the Company and its Subsidiaries provided that: (i) the Retiree voluntarily terminated employment with the Company's consent, (ii) the Retiree executes, in connection with Retirement, a Post-Employment Restriction Agreement and (iii) the Retiree fully complies with the Post-Employment Restriction Agreement at all times. A Retiree shall not be entitled to continued vesting under this Section 7.2(a) in the event of a failure to comply with any of these requirements. For avoidance of doubt, a Participant whose employment is terminated by the Company, either with or without cause (as described in Section 7.5 below) shall in no event be entitled to continued vesting under this Section 7.2, and instead shall only be entitled to rights under Section 7.6 below. Appreciation Units vesting under this Section 7.2 may only be redeemed during the Redemption Window Period that occurs during any calendar year; provided, however, that any redemption under this Section 7.2 will not occur until the Redemption Window Period in the immediately following calendar year for any purported redemption on or after July 1 of a calendar year.

(b)     A Retiree may redeem an unvested Appreciation Unit that becomes vested under Section 7.2(a) only after the Vesting Date under Section 6.1 of the Plan applicable to such Appreciation Unit. The Valuation Date occurring in the year in which the redemption occurs shall be used to value the Appreciation Units.

(c)     Notwithstanding Section 7.1(c) above, Appreciation Units shall in no event remain outstanding later than the end of the Redemption Window Period in the seventh calendar year following a Participant's Retirement. Any outstanding vested Appreciation Units that become subject to this limitation shall be redeemed during such Redemption Window Period using the rules set forth in Section 7.1(b) above.

7.3     **Special Rules for Redemption Due to Disability.** If a Participant becomes Disabled, the Committee may, in its sole discretion and upon the recommendation of the Chief Executive Officer of the Company, upon written application of the Participant, permit any or all outstanding unvested Appreciation Units to be vested. Any such Appreciation Units shall be subject to redemption as provided under Section 7.1 or at such times and in such manner as specified by the Committee, but in no event later than ten years after the Grant Date. For the avoidance of doubt, any redemption of the Appreciation Units held by a Participant who becomes permanently Disabled shall be governed by the rules of this Section 7.3 rather than Section 7.2.

7.4     **Special Rules for Redemptions Upon Death of Participant.** If a Participant dies while unvested Appreciation Units remain outstanding, the Committee shall cause such Appreciation Units to be vested and redeemed as of the date of the Participant's death, but the amount of the payment shall be based on the Value per Unit as of the Valuation Date immediately preceding (or coinciding with) the Participant's death.

7.5     Special Rules for Termination of Employment for Cause. Notwithstanding any other provision of this Section 7, if the Company or one of its Subsidiaries terminates a Participant's employment for "cause", the Company shall immediately forfeit all of such Participant's Appreciation Units regardless of whether such awards had previously become vested under Section 6 above. In the event that evidence is acquired after employment termination that a Participant acted or failed to act in such a manner that would have provided grounds for a "cause" termination, then the Company shall have the right to immediately forfeit any then outstanding Appreciation Units and/or recover any amounts received (determined on a before-tax basis) by such Participant that resulted from such Participant exercising Appreciation Units on or after any such action or inaction.

7.6     Special Rules for Redemptions Upon Termination of Employment for Reasons other than a Retirement, Disability or Death. A Participant who terminates employment with the Company and its Subsidiaries other than on account of either Retirement, Disability or death that qualifies for accelerated vesting under Section 6 above or continued vesting under Section 7.2 shall have his then outstanding and vested Appreciation Units automatically redeemed by the Company as soon as administratively practicable. The amount of the redemption payment shall be determined in the same manner as described in Section 7.1 above based on the Value per Unit as of the Valuation Date immediately preceding (or coinciding with) such termination of employment. Nothing in this Section 7.6 shall be construed to require any payment to a Participant whose employment is terminated for cause under Section 7.5 above.

7.7     Redemption by Company. Notwithstanding any other provision of the Plan to the contrary, the Company shall have the unilateral right to redeem any vested Appreciation Units held by one or more Participants for any reason and at any time in its sole discretion. A redemption under this Section 7.7 may be made either during or outside of a Redemption Window Period. If a redemption is made outside of a Redemption Window Period, the amount to be paid upon any such redemption shall be determined as provided under Section 7.1(b) by using the Valuation Date for the year of redemption in lieu of the Valuation Date that coincides with the beginning of the then current Redemption Window Period.

Section 8.    Valuation of Units.

For all purposes of the Plan, the Value per Unit as of a Valuation Date equals:

$$\frac{\text{BOOK VALUE} - \text{AOCI}}{\text{TOTAL UNITS}}$$

determined based on LMHC's financial statements for the immediately preceding fiscal year. For example, the Value per Unit on the April 1, 2013 Valuation Date shall be determined based on Book Value and AOCI (if any) as reported in LMHC's financial statements for the fiscal year ending December 31, 2012. Notwithstanding the above, the Committee may, in its sole discretion and upon the recommendation of the Chief Executive Officer of the Company, amend the valuation formula under this Section 8 at any time, provided that any such change shall only apply to future grants of Appreciation Units.

-7-

Section 9.     Forfeiture.

Unvested Appreciation Units shall be immediately forfeited if either a Participant's employment is terminated as described in Section 7.6 above or a Retiree fails to qualify for continued vesting after Retirement as set forth in Section 7.2(a) above. A Participant's Appreciation Units, whether vested or unvested, shall be immediately forfeited if a Participant's employment is terminated by the Company for cause under Section 7.5 above. Appreciation Units that become vested or are eligible to vest under Section 7.2 above shall be immediately forfeited if the Participant breaches a material provision of a Post-Employment Restriction Agreement. An Appreciation Unit, whether vested or unvested, will also be forfeited if it expires without being exercised as provided under Section 7 above. The Committee shall have the right, in its sole discretion for any reason, to forfeit some or all of a Participant's Appreciation Units that are then unvested if the Participant no longer meets the eligibility requirements of Section 4 of the Plan for any reason.

Section 10.    Miscellaneous.

    10.1     No Right to Award. No employee or other person shall have any claim or right to be granted Appreciation Units under the Plan.

    10.2     No Guarantee of Employment. Nothing contained herein shall give any Participant the right to be retained in the employ of the Company or any Subsidiary or to interfere with the right of the Company or any Subsidiary to discharge the Participant, nor shall it give the Company or any Subsidiary the right to require the Participant to remain in its respective employ or to interfere with the Participant's right to terminate employment at any time.

    10.3     Non-alienation. No benefit payable under the Plan shall be subject in any manner to alienation, sale, transfer, assignment, pledge, attachment, or encumbrance of any kind. Benefits payable under the Plan shall not be subject to domestic relations orders, including Qualified Domestic Relations Orders.

    10.4     Number. Where appropriate in context, the singular includes the plural, and the plural includes the singular.

    10.5     Applicable Law. The Plan and all rights hereunder shall be governed by the laws of the Commonwealth of Massachusetts, except to the extent that such laws are preempted by the laws of the United States.

    10.6     Tax Withholdings. The Company shall have the right to deduct any required withholding taxes from any payment made under the Plan. The Company shall not be obligated to pay, or reimburse the Participant or Beneficiary for, any income or other taxes or penalties that may be imposed on the Participant or Beneficiary as a result of this Plan by the Internal Revenue Service or any state or other taxing authority.

    10.7     Funding; Rights of Participants and Other Persons. The Plan shall at all times be entirely unfunded, and no provision shall at any time be made with respect to segregating assets of the Company for payment of any benefits hereunder. No Participant or other person shall have any

interest in any particular assets of the Company by reason of the right to receive a benefit under the Plan and any such Participant or other person shall have only the rights of a general unsecured creditor of the Company with respect to any rights under the Plan.

Section 11.     Amendment of the Plan.

The Company, by action of the Committee, may alter or amend the Plan from time to time in its discretion. No amendment to the Plan may alter, impair or reduce the number of Appreciation Units granted under the Plan prior to the effective date of such amendment without the written consent of any affected Participant; provided, however that nothing in the Plan shall be construed to prohibit the Committee from (a) making or providing for adjustments to Appreciation Units or other provisions of the Plan as the Committee, in its sole discretion, may in good faith determine to be equitably required in order to prevent dilution or enlargement of the rights of Participants that otherwise would result from a corporate transaction or event to the extent that such modification would not be considered a material modification for purposes of Section 409A of the Code, or (b) substituting for any or all outstanding Appreciation Units such alternative consideration in connection with any such corporate transaction or event as it may in good faith determine to be equitable under the circumstances and may require in connection therewith the cancellation or surrender of all Appreciation Units so replaced.

Section 12.     Termination of the Plan.

The Company may terminate the Plan at any time by action of the Committee. Unless sooner terminated by the Committee, the Plan shall terminate on April 1, 2022. No Appreciation Units shall be granted after the date of termination of the Plan, although after such date payments may be made with respect to Appreciation Units granted prior to the date of termination.

Section 13.     Claims Procedures.

    13.1     Review of Application for Benefits. The Company shall notify a Participant (or, if applicable, a Beneficiary) in writing within 90 days of the receipt of a written application for benefits of such Participant's or Beneficiary's eligibility or ineligibility for benefits under this Plan.

    13.2     Review of Denied Claim. If the Company determines that a Participant or Beneficiary is not eligible for any benefits or for full benefits, the notice described in Section 13.1 shall set forth the following:

        (a)     the specific reasons for such denial;

        (b)     a specific reference to the provisions of this Plan on which the denial is based;

        (c)     a description of any additional information or material necessary for the claimant to perfect a claim and a description of why it is needed; and

(d) an explanation of the Plan's claim review procedure and other appropriate information as to the steps to be taken if the Participant or Beneficiary wishes to have the claim reviewed.

The Participant or Beneficiary shall have the right to review pertinent documents.

If the Company determines that there are special circumstances requiring additional time to make a decision, the Company shall notify the Participant or Beneficiary of the special circumstances and the date by which a decision is expected to be made and may extend the time for up to an additional 90 days.

If a Participant or Beneficiary is determined by the Company to be ineligible for benefits, or if the Participant or Beneficiary believes that he or she is entitled to greater or different benefits, the Participant or Beneficiary shall have the opportunity to have such claim reviewed by the Company by filing a petition for review with the Company within 60 days after receipt of the notice issued by the Company. Such petition shall state the specific reasons the Participant or Beneficiary believes he or she is entitled to greater or different benefits. Within 60 days after receipt by the Company of such petition, the Company shall afford the Participant or Beneficiary an opportunity to present his or her position to the Company orally or in writing. The Company shall notify the Participant or Beneficiary of its decision in writing within the 60-day period, stating specifically the basis of its decision written in a manner calculated to be understood by the Participant or Beneficiary and the specific provisions of this Plan on which the decision is based. If, because of the need for a hearing, the 60-day period is not sufficient, such period may be extended for up to another 60 days, but notice of this extension must be given to the Participant or Beneficiary within the first 60-day period.

      13.3      Exhaustion/Limitation of Actions. A Participant or Beneficiary shall comply with the claims procedure set forth in Section 13.2 prior to filing any action in federal or state court with respect to a claim. Any provision of the Plan to the contrary notwithstanding, a claimant shall be barred from filing any action in federal or state court with respect to a claim if such action is not filed within one year from the date the Company denies the claim on review in accordance with Section 13.2.

Section 14.    Effective Date.

The Plan is effective as of January 1, 2012.

[Signature Page to Follow]


IN WITNESS WHEREOF, Liberty Mutual Group Inc. has caused this instrument to be executed by its duly authorized officer this **20** day of December, 2012 on behalf of each Company.

**LIBERTY MUTUAL GROUP INC.**

*Melanie Foley*
Melanie Foley
Senior Vice President
Manager, Human Resources & Administration