**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DAVID COHEN,

                    Plaintiff,

          v.

LIBERTY MUTUAL GROUP INC.
EXECUTIVE PARTNERSHIP DEFERRED
COMPENSATION PLAN and LIBERTY
MUTUAL GROUP INC. 2012 EXECUTIVE
PARTNERSHIP PLAN,

                    Defendants.

Case No. 1:16-cv-09295 (VSB)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

---

MAYER BROWN LLP
Richard E. Nowak
Nancy G. Ross
71 South Wacker Drive
Chicago, Illinois 60606
Tel: 312-701-8809
Fax: 312-706-8140
rnowak@mayerbrown.com

*Attorneys for Defendants Liberty Mutual
Group Inc. Executive Partnership Deferred
Compensation Plan and Liberty Mutual Inc.
2012 Executive Partnership Plan*

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND ...................................................................................... 1

    A.    The EPDCP and EPP .................................................................... 1

          1.    Plans' terms governing terminations "for cause." ..................... 2

          2.    Plans' terms governing benefit eligibility post-retirement ....... 3

          3.    Plans' claims procedures ........................................................... 4

    B.    Plaintiff's Separation from Liberty Mutual ................................. 4

    C.    Mary Connolly's Employment Reclassification Decision .................... 6

    D.    Employee Termination Appeal Rights ........................................ 8

    E.    Plaintiff's Benefits Claim and Appeal ....................................... 9

          1.    Plaintiff's claim for benefits (February 19, 2016) .................... 9

          2.    Lori Andrews' benefits denial letter (May 19, 2016) .............. 9

          3.    Plaintiff's benefits appeal (July 21, 2016) ............................... 10

          4.    Melanie Foley's benefits appeal denial letter (September 15, 2016) ....... 11

LEGAL STANDARD ................................................................................................ 14

ARGUMENT ............................................................................................................ 15

I.    MELANIE FOLEY'S DENIAL OF PLAINTIFF'S BENEFITS APPEAL WAS
NOT ARBITRARY AND CAPRICIOUS .................................................... 15

    A.    Controlling Legal Precedent and the Plans' Clear Terms Dictate that the
Arbitrary and Capricious Standard of Review Applies ...................... 16

    B.    The Undisputed Evidence Establishes that Melanie Foley's Interpretation
and Enforcement of the Plans' Unambiguous Terms Was Reasonable ............... 17

          1.    Melanie Foley's rational interpretation and enforcement of the
Plans' terms controls ............................................................... 18

          2.    Plaintiff did not meet his burden to establish his entitlement to
benefits .................................................................................... 19

          3.    Melanie Foley could not ignore the unequivocal Plan language in
deciding Plaintiff's benefits appeal ......................................... 21

II.    PLAINTIFF IS NOT ENTITLED TO ANY UNVESTED PLAN BENEFITS ............. 22

CONCLUSION ......................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Black & Decker Disability Plan v. Nord,*
    538 U.S. 822 (2003)..................................................................................................19

*Borough of Upper Saddle River, N.J. v. Rockland Cty. Sewer Dist. No. 1,*
    16 F. Supp. 3d 294 (S.D.N.Y. 2014)........................................................................14

*Brod v. Omya, Inc.,*
    653 F.3d 156 (2d Cir. 2011).......................................................................................14

*Celardo v. GNY Auto. Dealers Health & Welfare Tr.,*
    318 F.3d 142 (2d Cir. 2003).......................................................................................17

*CIGNA Corp. v. Amara,*
    563 U.S. 421 (2011)...................................................................................................16

*Durakovic v. Bldg. Serv. 32 BJ Pension Fund,*
    609 F.3d 133 (2d Cir. 2010)................................................................................17, 18

*Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.,*
    440 F.3d 571 (2d Cir. 2006)...........................................................................15, 16, 18, 2

*Firestone Tire & Rubber Co. v. Bruch,*
    489 U.S. 101 (1989)..............................................................................................14, 17

*Fuller v. J.P. Morgan Chase & Co.,*
    423 F.3d 104 (2d Cir. 2005).......................................................................................17

*Gonzalez v. Local 553 Pension Fund,*
    2017 WL 3242329 (S.D.N.Y. July 28, 2017) .........................................................16

*Griffin v. N.Y. State Nurses Ass'n Pension Plan & Benefits Fund,*
    757 F. Supp. 2d 199 (E.D.N.Y. 2010) .....................................................................22

*Harrison v. Wells Fargo Bank, N.A.,*
    773 F.3d 15 (4th Cir. 2014) .......................................................................................20

*Hobson v. Metro. Life Ins. Co.,*
    574 F.3d 75 (2d Cir. 2009)....................................................................................14, 15

*Jiras v. Pension Plan of Make-Up Artist & Hairstylists Local 798,*
    170 F.3d 162 (2d Cir. 1999)......................................................................................20

*Juliano v. Health Maint. Org.*,
    221 F.3d 279 (2d Cir. 2000)...................................................................................19

*Liberty Mutual Group Inc., et al. v. Aspen Insurance Holdings Ltd., et al.*,
    Index. No. 654296/2015 ........................................................................................6

*McCauley v. First Unum Life Ins. Co.*,
    551 F.3d 126 (2d Cir. 2008)...........................................................................18, 19

*Psihoyos v. John Wiley & Sons, Inc.*,
    748 F.3d 120 (2d Cir. 2014)..................................................................................14

*Roganti v. Metro. Life Ins. Co.*,
    786 F.3d 201 (2d Cir. 2015)............................................................15, 17, 19, 20, 21

*Vt. Teddy Bear Co. v. 1-800 Beargram Co.*,
    373 F.3d 241 (2d Cir. 2004)..................................................................................14

**Statutes**

29 U.S.C. § 502(a)(1)(B) .......................................................................1, 14, 15, 21, 22

29 U.S.C. § 1104(a)(1) ............................................................................................21

29 U.S.C. § 1132(a)(1)(B) .................................................................................15, 21

**Federal Rules**

Fed. R. Civ. P. 56(a) ..............................................................................................14

## INTRODUCTION

Plaintiff David Cohen ("Plaintiff") asserts benefits claims under ERISA § 502(a)(1)(B) against the Liberty Mutual Group Inc. Executive Partnership Deferred Compensation Plan ("EPDCP") and the Liberty Mutual Group Inc. 2012 Executive Partnership Plan ("EPP") challenging the plan administrator's (Melanie Foley's) denial of his benefits appeal pursuant to the unambiguous Plan terms governing terminations for cause. Liberty Mutual Group Inc. (Plaintiff's former employer) is not a defendant in this lawsuit, and Plaintiff has not brought any legal claims challenging the Company's employment decision to reclassify Plaintiff's separation as a termination for cause. The sole dispositive issue in this ERISA benefits case is whether Melanie Foley's denial of Plaintiffs' benefits appeal was arbitrary and capricious.

As set forth more fully below, Ms. Foley properly interpreted and enforced the unambiguous Plan terms governing terminations for cause (EPDCP §§ 8.5, 11 and EPP §§ 7.5, 9) when she denied Plaintiff's benefits appeal. In addition, despite having no obligation under the Plans to do so, in the course of reviewing Plaintiff's benefits appeal, Ms. Foley investigated the circumstances giving rise to Mary Connolly's (Manager of Employee Relations) employment decision to reclassify Plaintiff's separation from Liberty Mutual as a termination for cause to confirm that it was done in good faith. Accordingly, because the undisputed evidence establishes that Ms. Foley's benefits determination was not arbitrary and capricious, the Plans are entitled to summary judgment.

## FACTUAL BACKGROUND

### A.     The EPDCP and EPP.

The EPDCP and EPP (the "Plans") are employee benefit plans sponsored by Liberty Mutual Group Inc. ("Liberty Mutual") that were established to "provide an incentive to participating executives to work together in partnership to improve the Company's overall long

term performance." Defendants' Local Rule 56.1 Statement ("L.R. 56.1") ¶¶ 10-13. Under the EPDCP, eligible executives receive deferred compensation in the form of "Restricted Units." *Id.* ¶ 11. Under the EPP, eligible executives participate in the increase in Liberty Mutual Holding Company Inc.'s enterprise value through the award of "Appreciation Units." *Id.* ¶ 13. Pursuant to their terms, the Plans are administered by Liberty Mutual (*i.e.* the "Company"), which delegated the responsibility to review any benefit appeals to Melanie Foley, Liberty Mutual's Executive Vice President and Chief Talent & Enterprise Services Officer. *Id.* ¶¶ 5, 14.

1.   *Plans' terms governing terminations "for cause."*

The EPDCP and EPP contain specific provisions governing participants' eligibility for benefits if they separate from Liberty Mutual. In particular, EPDCP § 8.5 and EPP § 7.5 (titled "Special Rules for Termination of Employment for Cause") address terminations for cause and explicitly provide that a participant's benefits are forfeited if Liberty Mutual terminates his or her employment for cause:

> **EPDCP § 8.5:** Notwithstanding any other provision of this Section 8, if the Company or one of its Subsidiaries terminates a Participant's employment for "cause", the Company shall immediately forfeit all of such Participant's Restricted Units regardless of whether such awards had previously become vested under Section 7 above. In the event that evidence is acquired after employment termination that a Participant acted or failed to act in such a manner that would have provided grounds for a "cause" termination, then the Company shall have the right to immediately forfeit any then outstanding Restricted Units and/or recover any amounts received (determined on a before-tax basis) by such Participant under Section 8 on or after any such action or inaction.

> **EPP § 7.5:** Notwithstanding any other provision of this Section 7, if the Company or one of its Subsidiaries terminates a Participant's employment for "cause", the Company shall immediately forfeit all of such Participant's Appreciation Units regardless of whether such awards had previously become vested under Section 6 above. In the event that evidence is acquired after employment termination that a Participant acted or failed to act in such a manner that would have provided grounds for a "cause" termination, then the Company shall have the right to immediately forfeit any then outstanding Appreciation Units and/or recover any amounts received (determined on a before-tax basis) by such Participant that

2

resulted from such Participant exercising Appreciation Units on or after any such action or inaction.

*Id.* ¶¶ 16, 18.

In addition, EPDCP § 11 and EPP § 9 (titled "Forfeiture") reinforce EPDCP § 8.5 and EPP § 7.5 by emphasizing that "[a] Participant's [benefits], whether vested or unvested, shall be immediately forfeited if a Participant's employment is terminated by the Company for cause under Section [7.5 or 8.5] above." *Id.* ¶¶ 17, 19. Neither the EPDCP nor the EPP contains any provision that would allow a participant whose separation from Liberty Mutual is classified as a termination for cause to retain his or her Plan benefits.

### 2. *Plans' terms governing benefit eligibility post-retirement.*

The EPDCP and EPP also contain specific provisions governing participants' eligibility for benefits if they "retire" from Liberty Mutual—as Plaintiff purported to do before Mary Connolly reclassified his separation as a termination for cause. *See infra* at 6-8. Specifically, EPDCP § 8.3 and EPP § 7.2 (titled "Special Rules for Redemption Following Termination of Employment Due to Retirement") set forth three specific requirements that a "Retiree" must satisfy for his or her unvested benefits to continue to vest post-retirement: "(i) the Retiree voluntarily terminated employment with the Company's consent, (ii) the Retiree executes, in connection with Retirement, a Post-Employment Restriction Agreement and (iii) the Retiree fully complies with the Post-Employment Restriction Agreement at all times." L.R. 56.1 ¶¶ 20, 22. For the avoidance of any doubt, those Plan sections further state that "[a] Retiree shall not be entitled to continued vesting under this Section [8.3(a) or 7.2(a)] in the event of a failure to comply with any of these requirements." *Id.* ¶¶ 21, 23.

It is undisputed that Plaintiff (i) did not execute a Post-Employment Restriction Agreement when he separated from Liberty Mutual in October 2015 (or at any time thereafter);

3

and (ii) went to work for a competitor, Aspen Insurance U.S. Services Inc., which is prohibited under the terms of a Post-Employment Restriction Agreement. *Id.* ¶¶ 24, 34. It is also undisputed that Mary Connolly reclassified Plaintiff's separation as a termination for cause—and not a voluntary termination with Company consent—in December 2015. *Id.* ¶¶ 20, 40.

     3.    *Plans' claims procedures.*

    The EPDCP and EPP contain comprehensive claims procedures that allow a participant to submit both a claim for benefits and an appeal. *Id.* ¶¶ 25-29. Among other things, the claims procedures provide that the plan administrator "shall notify a Participant ... in writing, within 90 days of the receipt of a written application for benefits, of such Participant's ... eligibility or ineligibility for benefits under this Plan." *Id.* ¶ 26. If the plan administrator, after reviewing the written application for benefits, determines that the participant is not eligible, the participant may "fil[e] a petition for review" within 60 days of receiving the initial denial. *Id.* ¶ 27. The plan administrator then has 60 days to review the participant's petition for review (appeal) and make a final benefits determination. *Id.*

    After Mary Connolly reclassified Plaintiff's separation from Liberty Mutual as a termination for cause in December 2015, Plaintiff submitted a written application for benefits on February 19, 2016, which was denied by Lori Andrews on May 19, 2016. *Id.* ¶¶ 54, 57. On July 21, 2016, Plaintiff appealed Ms. Andrews' denial of his benefits claim. *Id.* ¶ 63. Melanie Foley denied Plaintiff's appeal on September 15, 2016. *Id.* ¶ 66.

**B.    Plaintiff's Separation from Liberty Mutual.**

    Plaintiff was employed by Liberty Mutual from 1999 to October 2015. *Id.* ¶ 1. On October 12, 2015, Plaintiff gave two weeks' notice to Liberty Mutual that he was resigning and retiring and his last day with the Company was October 26, 2015. *Id.* ¶ 34. At the time of his separation, Plaintiff was the President of LIU U.S., the United States entity of Liberty

International Underwriters ("LIU"). *Id.* ¶ 1. LIU is part of Liberty Mutual's "specialty insurance" division that insures unusual risks that are not covered by ordinary insurance policies. *Id.*

In the weeks preceding Plaintiff's notice of resignation and retirement, Liberty Mutual had intended to reorganize LIU U.S. because of the "the detrimental impact that was happening in that business" under Plaintiff's leadership. *Id.* ¶ 35. In connection with that reorganization, Liberty Mutual retained the global management consulting firm Oliver Wyman to conduct a six-week analysis of the current and potential future organizational structures for LIU U.S. *Id.*

Plaintiff abruptly submitted his notice of resignation and retirement on October 12, 2015—three days before the Company planned to meet with him about the reorganization on October 15, 2017. *Id.* ¶ 36. Although Plaintiff told Liberty Mutual that he was retiring, eight days after leaving the Company, one of Liberty Mutual's competitors, Aspen Insurance U.S. Services Inc. ("Aspen"), publicly announced on November 3, 2015 that Plaintiff had joined Aspen as its President and Chief Underwriting Officer. *Id.* ¶ 34. In the weeks that followed, more than 30 LIU employees and executives followed Plaintiff and defected to Aspen, including Plaintiff's CFO, Daniel Vaughn. *Id.* ¶ 37. Insurance industry publications referred to the mass exodus of employees as Aspen's "raid" on LIU. *Id.* ¶ 61. They also noted that Plaintiff was the first mover of the defecting LIU employees. *Id.*

On November 5, 2015 (two days after Aspen's announcement), Liberty Mutual Assistant General Counsel, Damon Hart, sent Plaintiff a letter reminding him of, among other things, his continuing obligation to "safeguard Liberty Mutual's confidential information and to refrain from using any tangible or intangible Liberty Mutual assets for your own benefit" in accordance with Liberty Mutual's Code of Business Ethics and Conduct. *Id.* ¶ 38. Mr. Hart also explained that Liberty Mutual was "reserv[ing] all rights to seek redress for any past, present and future

misappropriation of any Liberty Mutual assets, breach of fiduciary obligations as a senior officer of Liberty Mutual or any breach of your ongoing obligations to Liberty Mutual." *Id.*

On December 18, 2015, Liberty Mutual filed a lawsuit captioned *Liberty Mutual Group Inc., et al. v. Aspen Insurance Holdings Ltd., et al.*, Index. No. 654296/2015 (Part 61) in the Supreme Court of New York, County of New York, against Plaintiff and Aspen alleging, *inter alia*, breach of the duty of loyalty and breach of contract. *Id.* ¶ 52 .On August 16, 2017, pursuant to a confidential settlement, the parties filed a Stipulation of Discontinuance to discontinue the state court lawsuit with prejudice and without costs. *Id.* ¶ 53.

**C.   Mary Connolly's Employment Reclassification Decision.**

Liberty Mutual's company guidelines governing terminations for cause are set forth in Section 1715 of its Manager Policy Manual. *Id.* ¶¶ 31-32. Pursuant to Section 1715, terminations for cause require "the approval of Home Office Employee Relations" (i.e., Mary Connolly, Manager of Employee Relations and Human Resource Services). *Id.* ¶ 32. As Manager of Employee Relations and Human Resource Services, Ms. Connolly is responsible for managing the Employee Relations and Human Resource Services department and its employees. *Id.* ¶¶ 8-9. She has served in that role since 2012 and has worked in human resources for Liberty Mutual for more than 25 years. *Id.* ¶ 8.

In December 2015, having determined that Plaintiff breached his fiduciary duties as a Liberty Mutual executive, Ms. Connolly reclassified Plaintiff's separation from Liberty Mutual as a termination for cause. *Id.* ¶¶ 40, 42-47. Pursuant to her authority as Manager of Employee Relations and Human Resources Services, Ms. Connolly determined that a reclassification of Plaintiff's separation as a termination for cause was warranted because of, among other factors: (i) the substantial disruption that Plaintiff caused to the LIU business prior to his departure, which led Liberty Mutual to retain Oliver Wyman to study the detrimental impact that Plaintiff's

leadership had on the business; (ii) the suspicious timing and circumstances surrounding his and his subordinates' departures from LIU and defection to Aspen; and (iii) Plaintiff's misrepresentation that he was retiring when he was actually planning to defect to Aspen. *Id.* ¶ 42. Ms. Connolly did not need the approval of anyone at Liberty Mutual to reclassify Plaintiff's separation and no one instructed her to do it. *Id.* ¶ 40.

In reaching her decision, it was "significant" to Ms. Connolly that Plaintiff did not provide adequate notice of his alleged retirement given his leadership position within the Company (President of LIU U.S.). *Id.* ¶ 42. And it was particularly of concern that Plaintiff—who claimed to be retiring—had immediately defected to Aspen because of Aspen's particular competitive position to Liberty Mutual in the niche market of specialty insurance. *Id.* ¶ 43. During her deposition, Ms. Connolly explained that every termination decision she makes is "difficult." *Id.* ¶ 46. She also testified that "[w]e rely on facts and circumstances and then we make, have to use our best judgment in making a decision." *Id.* Nonetheless, she testified that there was no doubt in her mind that reclassifying Plaintiff's separation as a termination for cause was appropriate because Plaintiff had "violated [his] responsibility to the company as an officer." *Id.* ¶¶ 44, 47.

On December 23, 2015, Ms. Connolly sent Plaintiff a letter informing him that she was reclassifying his separation "from a voluntary resignation to a termination for cause." *Id.* ¶ 49. Attached to the letter was a one-page "Termination Summary of Compensation, Benefits, and Perquisites" setting forth the effect the reclassification would have on certain benefits under various Liberty Mutual benefit plans. *Id.* ¶ 50. With respect to the EPDCP and EPP, the letter stated:

> In the event of termination for "cause", participant forfeits all vested and unvested units in the Plan. As a result of termination for cause, $971,500 of vested units and investment fund value and $299,125 of unvested units has been forfeited.

*Id.* ¶ 50.

In the course of drafting the letter, Ms. Connolly had sought and received the information contained in the Termination Summary of Compensation, Benefits, and Perquisites from Liberty Mutual's Executive Compensation department as well as its Benefits department. *Id.* In her role as Manager of Employee Relations and Human Resource Services, Ms. Connolly does not consider an employee's benefits when making a termination decision, and she did not consider Plaintiff's EPDCP or EPP benefits when she reclassified his separation as a termination for cause. *Id.* ¶ 48.

**D.     Employee Termination Appeal Rights.**

Section 1720 of Liberty Mutual's Manager Policy Manual provides that all terminated employees have the right to appeal any termination decision. *Id.* ¶ 33. Specifically, Section 1720 includes the bolded heading "**Employee Request for Review (Appeals)**" and states that "[t]erminated employees may have the circumstances of their termination reviewed upon written request" to Liberty Mutual's Executive Vice President, Chief Human Resources and Administration Officer. *Id.* Plaintiff never took advantage of this protocol by submitting a written request for a review of Mary Connolly's decision to reclassify his separation as a termination for cause. *Id.* ¶¶ 51, 56, 65. The only written claim or request for review that Plaintiff submitted was a *claim for benefits* under the EPDCP and EPP (and other Liberty Mutual benefit plans) in February 2016, and his appeal of the denial of his benefits claim in July 2016. *Id.* ¶¶ 54, 63.

8

### E.     Plaintiff's Benefits Claim and Appeal.

#### 1.     Plaintiff's claim for benefits (February 19, 2016).

On February 19, 2016, Plaintiff's attorney sent a "Request for Review of Denial of Benefits" letter to the "Plan Administrator(s) of the EPP, EPDCP, Retirement Plan, and SIRP" under "Section 13.2 of the EPP" and "Section 17 of the EPDCP"—the Plans' claims procedures. *Id.* ¶¶ 54-55. Plaintiff's attorney began the letter by stating "I represent David Cohen *with respect to his claims for benefits* under the EPP [and] the EPDCP." *Id.* ¶ 55 (emphasis added).

There was no reference in Plaintiff's letter to Section 1720 of the Manager Policy Manual, the letter was not directed to Liberty Mutual's Executive Vice President, Chief Human Resources and Administration Officer, and Plaintiff did not request a review of Ms. Connolly's employment separation reclassification decision. *Id.* ¶ 56. Instead, Plaintiff directed his letter to the plan administrators of the respective employee benefit plans, and sought to challenge the impact of Ms. Connolly's termination reclassification notice on his eligibility for benefits under those plans. *Id.* ¶¶ 54-56.

#### 2.     Lori Andrews' benefits denial letter (May 19, 2016).

In accordance with the Plans' terms for evaluating benefit claims, Plaintiff's letter was directed internally to Lori Andrews who, in her role as Vice President of Talent & Enterprise Services and Manager of Compensation, had been delegated the authority to respond to initial benefit claims under the EPDCP and EPP. *Id.* ¶¶ 7, 57. Pursuant to that authority, on May 19, 2016, Ms. Andrews sent Plaintiff a letter denying his claim for benefits under the EPDCP and EPP. *Id.* ¶ 57. In her denial letter, Ms. Andrews set forth the bases for her decision including, among other things, that Plaintiff's EPDCP and EPP benefits were forfeited in accordance with the Plans' "unequivocal terms" because his separation had been classified as a termination for cause. *Id.* ¶ 58.

Notwithstanding the Plans' unambiguous and "unequivocal" terms governing terminations for cause, Ms. Andrews deemed it prudent to personally "review[] the Company's reasons for classifying Mr. Cohen's departure as a termination for cause in order to assure the Company's decision was made in good faith." *Id.* ¶ 59. As part of her review, Ms. Andrews spoke with the President of LIU, Chris Peirce, Chief Talent Officer of LIU, Brendan Monaghan, and Mary Connolly, among others, and took detailed notes of her conversations. *Id.* ¶ 60. Ms. Andrews also reviewed other written materials, including insurance industry publications that described Aspen's "raid" on LIU. *Id.* ¶ 61.

Ms. Andrews concluded that Plaintiff was not eligible for EPDCP and EPP benefits under the Plans' unambiguous terms, but also explained that "[t]he circumstances surrounding Mr. Cohen's departure and their resulting disruption to the Company's business provide ample evidence that the Company acted in good faith" when Ms. Connolly reclassified Plaintiff's separation as a termination for cause. *Id.* ¶ 59. Following the Plans' claims procedures, Ms. Andrews informed Plaintiff that he had the right to submit a "petition for review" to Melanie Foley, Liberty Mutual's Executive Vice President, Chief Talent & Enterprise Services Officer. *Id.* ¶ 62. In her role as Executive Vice President and Chief Talent & Enterprise Services Officer, Ms. Foley had been delegated the authority to review any appeal of a denied claim for benefits under the EPDCP and EPP. *Id.* ¶ 5.

### 3. *Plaintiff's benefits appeal (July 21, 2016).*

On July 21, 2016, Plaintiff's attorney sent an "Appeal of Denial of Benefits" letter to Melanie Foley in which he again invoked the Plans' claims procedures ("Section 13.2 of the EPP" and "Section 17.2 of the EPDCP"). *Id.* ¶¶ 63-64.

Once again, there was no reference to Section 1720 of the Manager Policy Manual in Plaintiff's letter, and Plaintiff did not request a review of Mary Connolly's reclassification

decision. *Id.* ¶ 65.  Rather, Plaintiff's appeal focused on his alleged entitlement to benefits under the EPDCP and EPP benefits and his disagreement with the "plan administrator's" (Lori Andrews) decision. *Id.* Plaintiff's letter also stated that he was "respectfully request[ing] that each of the plan administrators reconsider the Denials made with respect to Mr. Cohen's benefits under the Plans on the grounds set forth above." *Id.*

    4.    *Melanie Foley's benefits appeal denial letter (September 15, 2016).*

On September 15, 2016, Melanie Foley sent Plaintiff a letter denying his benefits appeal. *Id.* ¶ 66. Ms. Foley's consideration of Plaintiff's appeal was her only involvement with Plaintiff's EPDCP and EPP benefits and the events stemming from his separation from Liberty Mutual. *Id.* ¶ 41. Ms. Foley had not been involved in Mary Connolly's decision to reclassify Plaintiff's separation as a termination for cause in December 2015, and no one told her how to decide Plaintiff's benefits appeal. *Id.* ¶¶ 41, 71.

In her letter, Ms. Foley explained that, after personally "reviewing the[] contentions" in Plaintiff's appeal "as well as the relevant evidence surrounding Mr. Cohen's reclassification," she determined that "Mr. Cohen does not qualify for benefits under the terms of the EPP and the EPDCP." *Id.* ¶ 66. Beginning with the Plans' unambiguous terms, Ms. Foley explained that "both the EPP and the EPDCP provide for the forfeiture of benefits following a decision by the Company to terminate a plan participant's employment for cause." Ms. Foley further explained that "[t]he plans do not authorize the plan administrators to override that decision." *Id.* ¶ 67.

Ms. Foley then responded to the various arguments in Plaintiff's appeal. In response to Plaintiff's argument that the Plans do not define "cause," Ms. Foley explained that:

> The plain terms of both the EPP and the EPDCP state, "*[I]f the Company or one of its Subsidiaries terminates a Participant's employment for 'cause,'* the Company shall immediately forfeit all of such Participant's" Appreciation Units under the EPP or Restricted Units under the EPDCP. *See* EPP § 7.5; EPDCP §

8.5. These terms make clear that it is the Company, not the plan administrator, who determines whether cause exists in classifying an employee's termination.

*Id.* ¶ 68.

In response to Plaintiff's argument that the Plans had to affirmatively proffer evidence justifying Ms. Connolly's decision to reclassify his separation as a termination for cause, Ms. Foley explained that Plaintiff's argument was misfocused. Specifically, Ms. Foley underscored that the only "logical interpretation" of EPDCP § 8.5 and EPP § 7.5 (quoted above) was:

> if *the Company* acquires evidence after an employee departs which provides grounds for reclassification of the employee's departure as a termination for cause, benefits under the EPP and the EPDCP shall be forfeited in the same manner as had the employee's termination originally been classified as one for cause.

*Id.* ¶ 69.

Ms. Foley further explained why the limited evidence that Plaintiff had submitted with his appeal was insufficient to establish his entitlement to EPDCP or EPP benefits:

> Your perception that Mr. Cohen's termination for cause was based solely on the substantial number of employees that joined him at his subsequent employer is wrong. Notwithstanding the various affidavits that you have provided maintaining that Mr. Cohen did not solicit or recruit Liberty Mutual employees to follow him to Aspen Insurance, Mr. Cohen's reclassification as a termination for cause was based on evidence of the overall disruption and harm to the business caused by Mr. Cohen. Mr. Cohen's affidavit does not contradict that determination. The notes provided by Lori Andrews in connection with her initial determination reflect examples of the problems and issues resulting from Mr. Cohen's departure. My independent investigation corroborated the grounds for reclassifying Mr. Cohen's departure as one for cause.

*Id.* ¶ 70.

Notwithstanding the Plans' unambiguous terms, Ms. Foley—like Lori Andrews before her—also took it upon herself to "further investigate[] the circumstances giving rise to [Plaintiff's] termination for cause." *Id.* ¶ 71. As Ms. Foley testified during her deposition, she

performed her "own personal due diligence to have my own sense of comfort that [the reclassification decision] was done in a fair way." *Id.*[1]

In connection with her investigation, Ms. Foley spoke "with the Company officers who made or were involved in the decision, studied their reasons, and reviewed evidence supporting their concerns with the business disruption and tainted Company reputation caused by Mr. Cohen's departure." *Id.* In addition to Ms. Connolly and Ms. Andrews, Ms. Foley spoke with LIU executives, including Brendan Monaghan (Chief Talent Officer), Chris Peirce (President), Gordon McBurney (Chief Underwriting Officer), and James Hinchley (President, LIU Americas). *Id.* ¶ 72. Ms. Foley took handwritten notes of her conversations. *Id.*

When Plaintiff's counsel specifically asked Ms. Foley at her deposition about her conversation with Mr. Hinchley, she explained that Mr. Hinchley was "desiring and supportive of a termination for cause" because he told her that "if [Mr. Hinchley] knew what was going on before Mr. Cohen left [the Company], he would have reclassified him before he even left the building." *Id.* ¶ 73. Ms. Foley also testified that Ms. Connolly had "confirmed" to her during their conversation that Plaintiff had engaged in inappropriate actions and behaviors by "describ[ing] to me what she [Ms. Connolly] learned during her investigation [by] speaking with various parties." *Id.* ¶ 74. Ms. Foley also reviewed Ms. Andrews' handwritten notes which, as she explained in her appeal denial letter, "reflect[ed] examples of the problems and issues resulting from Mr. Cohen's departure." *Id.* ¶ 75.

Based on her investigation—and the Plans' unambiguous terms—Ms. Foley determined that Plaintiff was not eligible for EPDCP and EPP benefits and that Ms. Connolly's reclassification of Plaintiff's separation "was appropriate" because Ms. Foley's "independent

---

[1] Plaintiff decided to forego the deposition of Ms. Andrews and a Rule 30(b)(6) corporate representative despite requesting, and being granted, leave to take those depositions during the discovery telephone conference with the Court on April 6, 2017.

investigation corroborated the grounds for reclassifying Mr. Cohen's departure as one for cause."
*Id.* In accordance with the Plans' claims procedures, Ms. Foley informed Plaintiff that, because
she had denied his benefits appeal, he "ha[d] the right to bring a civil action under Section 502(a)
of the Employee Retirement Income Security Act of 1974." *Id.* ¶ 76.

On December 1, 2016, Plaintiff filed this ERISA benefits lawsuit against the EPDCP,
EPP, and two other benefit plans challenging Ms. Foley's denial of his benefits appeal. (Dkt. 1).
On December 19, 2016, Plaintiff filed an Amended Complaint asserting only ERISA
§ 502(a)(1)(B) claims against the EPDCP (Count I) and EPP (Count II). (Dkt. 19).

## LEGAL STANDARD

Summary judgment is appropriate where the movant shows that "there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.
Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123-24 (2d Cir. 2014)
(same). "In determining whether summary judgment is appropriate," a court must "construe the
facts in the light most favorable to the non-moving party and ... resolve all ambiguities and draw
all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir.
2011) (internal quotation marks omitted); *see also Borough of Upper Saddle River, N.J. v.
Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same). Additionally,
"[i]t is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co.
v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

With respect to ERISA § 502(a)(1)(B) benefits claims, it is settled Supreme Court and
Second Circuit law that, if "[a] benefit plan gives the administrator ... discretionary authority to
determine eligibility for benefits or to construe the terms of the plan," *Firestone Tire & Rubber
Co. v. Bruch*, 489 U.S. 101, 115 (1989), a district court may "not disturb the administrator's
ultimate conclusion unless it is 'arbitrary and capricious.'" *Hobson v. Metro. Life Ins. Co.*, 574

F.3d 75, 82 (2d Cir. 2009). Stated another way, "where (as in this case) the relevant plan vests its administrator with discretionary authority over benefits decisions ... the administrator's decisions may be overturned only if they are arbitrary and capricious." *Roganti v. Metro. Life Ins. Co.*, 786 F.3d 201, 210 (2d Cir. 2015).

## ARGUMENT

In his Amended Complaint, Plaintiff asserts ERISA § 502(a)(1)(B) benefits claims against the EPDCP (Count I) and the EPP (Count II). (Dkt. 19). In each count, Plaintiff alleges that "[i]t violated the terms of the [plan] to forfeit Mr. Cohen's benefits without any evidence of wrongdoing by Mr. Cohen during his employment with Liberty Mutual and to reduce his benefits merely because he left the company." Compl. ¶¶ 43, 50. Not only are Plaintiff's allegations factually unsupported in that they ignore the Plans' unambiguous terms governing terminations for cause, it is settled Second Circuit law that the decision of a plan administrator who adheres to a plan's terms when deciding a benefits claim should be upheld. *See Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578–79 (2d Cir. 2006). Accordingly, for the reasons set forth below, the Plans are entitled to summary judgment because Ms. Foley's denial of Plaintiff's benefits appeal was neither arbitrary nor capricious.

## I.   MELANIE FOLEY'S DENIAL OF PLAINTIFF'S BENEFITS APPEAL WAS NOT ARBITRARY AND CAPRICIOUS.

ERISA § 502(a)(1)(B) only authorizes a plan participant to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). As the statute's plain language indicates, a participant can only seek to "recover benefits *due to him under the terms of his plan*" (*id.*)—he cannot recover benefits that are not provided for by the plan's terms, and courts lack the authority to modify or reform the plan's

terms to award a participant benefits. *CIGNA Corp. v. Amara*, 563 U.S. 421, 436-38 (2011). Stated another way, "unambiguous language in an ERISA plan must be interpreted and enforced in accordance with its plain meaning." *Gibbs*, 440 F.3d at 578-79 (quotation marks omitted).

In this case, not only did Melanie Foley interpret and enforce the Plans' unambiguous terms in denying Plaintiff's benefits appeal, she personally investigated the circumstances of Mary Connolly's employment reclassification decision underlying Plaintiff's forfeiture of benefits to confirm that it was done in good faith. Accordingly, the undisputed evidence establishes that Ms. Foley's decision was neither arbitrary nor capricious and the Plans are entitled to summary judgment.

**A.   Controlling Legal Precedent and the Plans' Clear Terms Dictate that the Arbitrary and Capricious Standard of Review Applies.**

As a threshold matter, this Court must apply an arbitrary and capricious standard of review to Melanie Foley's benefits determination. EPDCP § 3 and EPP § 3 provide that the Plans "shall be administered by the Company" and "[t]he Company shall *have the authority in its discretion*" to, among other things:

> (g) to construe and interpret the terms of the Plan and award documents, (h) to correct any defect, supply any omission, or reconcile any inconsistency in the Plan or any award document in the manner and to the extent it shall deem desirable to carry out the purposes of the Plan, (i) to prescribe, amend, and rescind rules and regulations relating to the plan ... [and] (n) to make all other determinations and take all other actions described in the Plan as the Company otherwise deems necessary or advisable for administering the Plan and effectuating its purposes.

*Id.* ¶¶ 14-15 (emphasis added).

Based on the foregoing Plan language, it is indisputable that the EPDCP and EPP unequivocally grant the plan administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *See, e.g.*, *Gonzalez v. Local 553 Pension Fund*, 2017 WL 3242329, at *4 (S.D.N.Y. July 28, 2017) (applying arbitrary and capricious standard of

review because the plan conferred on the defendants discretion "to administer, apply and interpret the Plan and any other Plan documents and to decide all matters arising in connection with the operation or administration of the Plan"). Accordingly, the highly deferential arbitrary and capricious standard of review applies to Ms. Foley's determination that Plaintiff forfeited his benefits under the Plans. *See Firestone*, 489 U.S. at 111 (plan administrators' benefits decisions are evaluated pursuant to the principles of trust law, which "make a deferential standard of review appropriate when a trustee exercises discretionary powers").

**B.    The Undisputed Evidence Establishes that Melanie Foley's Interpretation and Enforcement of the Plans' Unambiguous Terms Was Reasonable.**

Notwithstanding the Court's decision allowing Plaintiff to take fulsome discovery in this matter, there is no evidence in the record that would discredit Melanie Foley's independent determination in her capacity as plan administrator that Plaintiff forfeited his EPDCP and EPP benefits. Plaintiff's personal belief that Mary Connolly should not have reclassified his separation as a termination for cause is inapposite to this ERISA benefits lawsuit and does not support any finding that Ms. Foley's faithful application of the Plans' unambiguous terms was unreasonable.

The Second Circuit has instructed that the arbitrary and capricious standard of review is "'highly deferential' and 'the scope of judicial review is narrow.'" *Roganti*, 786 F.3d 201 at 211 (quoting *Celardo v. GNY Auto. Dealers Health & Welfare Tr.*, 318 F.3d 142, 146 (2d Cir. 2003)). For that reason, a reviewing court may not substitute its own judgment for that of the plan administrator (Ms. Foley) and may not overturn her decision unless it concludes that the decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 141 (2d Cir. 2010); *Fuller v. J.P. Morgan Chase & Co.*, 423 F.3d 104, 107 (2d Cir. 2005). In the ERISA benefits context,

17

"substantial evidence" means "evidence that a reasonable mind might accept as adequate to support the conclusion reached by the administrator and requires more than a scintilla but less than a preponderance." *Durakovic*, 609 F.3d at 141. In addition, "[w]here both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control." *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 132 (2d Cir. 2008) (quotation marks omitted).

1.   *Melanie Foley's rational interpretation and enforcement of the Plans' terms controls.*

EPDCP § 8.5 and EPP § 7.5 unequivocally and unambiguously provide that, if a participant is terminated for cause, his or her benefits are forfeited. L.R. 56.1 ¶¶ 16, 18 ("if the Company ... terminates a Participant's employment for 'cause', the Company shall immediately forfeit all of such Participant's [plan benefits] regardless of whether such awards had previously become vested"). In addition EPDCP § 11 and EPP § 9 reinforce the language in EPDCP § 8.5 and EPP § 7.5 by stating that "[a] Participant's [plan benefits], whether vested or unvested, shall be immediately forfeited if a Participant's employment is terminated by the Company for cause." *Id.* ¶¶ 17, 19.

As set forth above, Mary Connolly, in her capacity as Manager of Employee Relations and Human Resources Services, reclassified Plaintiff's separation as a termination for cause—an employment decision that Plaintiff did not challenge. *Id.* ¶¶ 40, 51, 56, 65. Accordingly, because Plaintiff's separation was indisputably classified as a termination for cause, Ms. Foley, in her capacity as plan administrator, was legally obligated to enforce the Plans' unambiguous terms in accordance "with [their] plain meaning" in evaluating Plaintiff's benefits appeal. *Gibbs*, 440 F.3d at 578-79 (quotation marks omitted). As Ms. Foley correctly explained in her appeal denial letter, "both the EPP and the EPDCP provide for the forfeiture of benefits following a decision

18

by the Company to terminate a plan participant's employment for cause." And "[t]he plans do not authorize the plan administrators to override that decision." *Id.* ¶ 67.

Despite the Plans' unambiguous terms, Plaintiff argued in his appeal that EPDCP § 8.5 and EPP § 7.5 required the Plans to affirmatively proffer evidence justifying Ms. Connolly's employment reclassification decision. *Id.* ¶¶ 69, 63 (Ex. 16). In response, Ms. Foley explained that—contrary to Plaintiff's position—it was not the Plans' obligation to defend the Company's employment decision because the only "logical interpretation" of EPDCP § 8.5 and EPP § 7.5 was that:

> if *the Company* acquires evidence after an employee departs which provides grounds for reclassification of the employee's departure as a termination for cause, benefits under the EPP and the EPDCP shall be forfeited in the same manner as had the employee's termination originally been classified as one for cause.

*Id.* ¶ 69.

Even assuming Plaintiff's argument was based on a rational interpretation of the Plans' terms—and it is not—this case would present conflicting interpretations of the Plans which, under Second Circuit law, dictates that Ms. Foley's "interpretation must be allowed to control." *McCauley*, 551 F.3d at 132. Because no evidence in the record even remotely suggests that Ms. Foley's determination was arbitrary and capricious, the Plans are entitled to summary judgment.

### 2.     *Plaintiff did not meet his burden to establish his entitlement to benefits.*

It is also settled law that the burden is on a benefits claimant to affirmatively establish his entitlement to benefits under the terms of the plan. *Roganti*, 786 F.3d at 212 (citing *Juliano v. Health Maint. Org.*, 221 F.3d 279, 287–88 (2d Cir. 2000)). While "'[p]lan administrators may not arbitrarily refuse to credit a claimant's reliable evidence' ... administrators may exercise their discretion in determining whether a claimant's evidence is sufficient to support his claim." *Id.* (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)). "[I]n cases where

the evidence conflicts, an administrator's conclusion drawn from that evidence that a claim should be denied will be upheld unless the evidence points so decidedly in the claimant's favor that it would be unreasonable to deny the claim on the basis of the evidence cited by the administrator." *Id.* (comparing cases). In fact, even in cases where the only available evidence "point[s] in the claimant's favor ... it may nonetheless be permissible for the plan administrator to conclude that the evidence is insufficient to support the claim." *Id.* (citing *Jiras v. Pension Plan of Make-Up Artist & Hairstylists Local 798*, 170 F.3d 162, 163–64 (2d Cir. 1999)). Ultimately, "[t]he rule is one of reason," and "[n]othing ... requires plan administrators to scour the countryside in search of evidence to bolster a petitioner's case." *Id.* (quoting *Harrison v. Wells Fargo Bank, N.A.,* 773 F.3d 15, 22 (4th Cir. 2014)).

As described above, Melanie Foley not only rationally interpreted and applied the Plans' unequivocal terms in denying Plaintiff's benefits appeal, she performed her own investigation into the circumstances of Mary Connolly's employment reclassification decision and also considered the limited evidence that Plaintiff proffered in support of his benefits appeal. L.R. 56.1 ¶¶ 71-75. In particular, Plaintiff submitted affidavits from other defecting LIU employees to bolster his claim that he did not solicit those employees to join him at Aspen. Notwithstanding the fact that the affidavits were self serving and virtually identical, Ms Foley did not disregard them in reviewing Plaintiff's appeal. Rather, Ms. Foley explained in her letter why the affidavits did not establish Plaintiff's entitlement to benefits. She wrote:

> Your perception that Mr. Cohen's termination for cause was based solely on the substantial number of employees that joined him at his subsequent employer is wrong. Notwithstanding the various affidavits that you have provided maintaining that Mr. Cohen did not solicit or recruit Liberty Mutual employees to follow him to Aspen Insurance, Mr. Cohen's reclassification as a termination for cause was based on evidence of the overall disruption and harm to the business caused by Mr. Cohen. Mr. Cohen's affidavit does not contradict that determination. The

20

notes provided by Lori Andrews in connection with her initial determination reflect examples of the problems and issues resulting from Mr. Cohen's departure.

*Id.* ¶ 70.

Ms. Foley further explained that her investigation—which included speaking with Ms. Connolly, Lori Andrews, Brendan Monaghan, Chris Peirce, Gordon McBurney, and James Hinchley—"corroborated the grounds for reclassifying Mr. Cohen's departure as one for cause." *Id.* ¶ 73-75. Ms. Foley's careful consideration of Plaintiff's proffered evidence and "reasonable effort to develop the record further" in evaluating Plaintiff's appeal, *Roganti*, 786 F.3d at 213, leads to the inescapable conclusion that her final determination was well-reasoned and not arbitrary and capricious.

### 3. Melanie Foley could not ignore the unequivocal Plan language in deciding Plaintiff's benefits appeal.

Plaintiff contends that Ms. Foley should have ignored the Plans' unambiguous terms and disregarded Mary Connolly's employment reclassification decision in deciding his benefits appeal. Compl. ¶¶ 43, 50. Fatal to Plaintiff's contention, however, is that ERISA § 502(a)(1)(B), on its face, only authorizes a plan participant to bring an action to recover benefits that are "due to him *under the terms of his plan.*" 29 U.S.C. § 1132(a)(1)(B) (emphasis added). In addition, it is settled law that plan administrators have a fiduciary duty to faithfully adhere to the plan when deciding benefits claims as "ERISA requires a balance between the obligation to guard the assets of the trust from improper claims [and] the obligation to pay legitimate claims." *Roganti*, 786 F.3d at 212 (internal quotation marks omitted). This is because "[a]n ERISA plan administrator ... owes a fiduciary duty not just to the individual participant or beneficiary whose claim is under review, but to all of the participants and beneficiaries of the plan." *Id.* at 211-12 (citing 29 U.S.C. § 1104(a)(1)). Accordingly, in her capacity as plan administrator, Ms. Foley had a fiduciary duty to interpret and enforce the Plans' unequivocal terms "in accordance with [their] plain meaning,"

21

*Gibbs*, 440 F.3d at 578-79. Because Ms. Foley faithfully adhered to the Plans' terms in deciding Plaintiff's benefits appeal, her decision was neither arbitrary nor capricious. *See, e.g., Griffin v. N.Y. State Nurses Ass'n Pension Plan & Benefits Fund*, 757 F. Supp. 2d 199, 215–16 (E.D.N.Y. 2010) (granting plan administrator's motion for summary judgment because "the language of the Plan is unambiguous and the Trustee interpreted and enforced it in accordance with its plain meaning").

## II.    PLAINTIFF IS NOT ENTITLED TO ANY UNVESTED PLAN BENEFITS.

Finally, it is undisputed that Plaintiff is not entitled under any circumstances to any EPDCP or EPP benefits that were unvested when he separated from Liberty Mutual. As set forth above, even if Mary Connolly had not reclassified Plaintiff's separation as a termination for cause in December 2015, Plaintiff did not satisfy the clear and unambiguous requirements of EPDCP § 8.3 and EPP § 7.2 (setting forth limited circumstances allowing for the continued vesting of benefits after separation) because (i) he did not execute a Post-Employment Restriction Agreement and (ii) he could not have complied with such an agreement because he immediately went to work for a competitor (Aspen). L.R. 56.1 ¶¶ 24, 34. As those Plan sections make clear, "[a] Retiree shall not be entitled to continued vesting under this Section 8.3(a) [or Section 7.2(a)] in the event of a failure to comply with any of these requirements." *Id.* ¶¶ 20, 22. Accordingly, in no event is Plaintiff entitled to any EPDCP or EPP benefits that were unvested when he left Liberty Mutual on October 26, 2015.

## CONCLUSION

The matter before the Court is not an employment lawsuit and Plaintiff does not assert any employment law claims. Rather, Plaintiff has only brought two ERISA § 502(a)(1)(B) benefits claims against the EPDCP and EPP challenging Melanie Foley's denial of his benefits appeal. Not only is Plaintiff unable to prove that Ms. Foley's decision was arbitrary and

capricious, the undisputed evidence establishes that Ms. Foley reasonably interpreted and enforced the Plans' unambiguous terms in accordance with their plain meaning and Second Circuit law, and that she conscientiously investigated the circumstances of Ms. Connolly's employment reclassification decision before applying those unambiguous terms. Accordingly, the Plans are entitled to summary judgment and Plaintiff's claims should be dismissed with prejudice.

Dated: December 7, 2017                     MAYER BROWN LLP

                                  By:   */s/ Richard E. Nowak*
                                        Richard E. Nowak
                                        Nancy G. Ross
                                        71 South Wacker Drive
                                        Chicago, Illinois 60606
                                        Tel: 312-701-8809
                                        Fax: 312-706-8140
                                        rnowak@mayerbrown.com
                                        nross@mayerbrown.com

                                        *Attorneys for Defendants Liberty Mutual*
                                        *Group Inc. Executive Partnership Deferred*
                                        *Compensation Plan and Liberty Mutual Inc.*
                                        *2012 Executive Partnership Plan*

23